## Richmond.

ATLANTIC & DANVILLE R. R. CO. V. PEAKE.

December 4th, 1890.

1.—PRACTICE AT COMMON LAW—*Special jury—Case at bar.*—The allowance or refusal of a special jury is matter resting in the sound judicial dis_ cretion of the court, and the refusal of the court to order one in this case was not error.

2. IDEM—*Amendment of return—Absence of witness—Continuance.*—Though there be nothing to show a valid service of the summons, allowing return to be amended is not ground for continuance, especially where the case has been previously by consent set for trial. Nor is the absence of a material witness, where the case is postponed, and the witness summoned to the next day, and the record does not show whether he then appeared or not.

3. IDEM—*Instructions.*—Instructions to the effect that owner of land adjacent to railroad, under purchase after its construction, cannot recover for injury to his crops by overflow resulting from insufficient outlets for water and defects in the construction of the railroad : *held*, properly refused.

4. IDEM—*Conduct of juror—Code, section 3168.*—Remarks of juror during trial, even if reprehensible, cannot be taken advantage of after verdict ; and for a juror to say upon hearing a fact testified by a witness, " Yes, sir ; I know all about it. That's so," is only in obedience to Code, sec. 3168, declaring that " a juror, knowing anything relative to a fact in issue, shall disclose the same in open court."

3. IDEM—*Irregularities—General appearance.*—It is the settled rule that a defendant, by appearing and pleading, or taking or assenting to a continuance, waives all defects in the process and in the service thereof.

Error to judgment of circuit court of Norfolk county, rendered on the 28th of September, 1889, in an action of trespass on the case, wherein John G. Peake was plaintiff and

the Atlantic & Danville Railway Company was defendant. The transcript of the record, as certified by the clerk of the court, states that the declaration was filed at rules, on the third Monday in July, 1889, to which rules the writ, which was dated the 27th day of June, 1889, directed the defendant company to be summoned to answer. The declaration charges that the defendant, in constructing its road over the land of Jacob Reid, situate in the Western Branch Magisterial District, in the said county, and subsequently purchased by the plaintiff, so negligently and imperfectly constructed its works in omitting to provide suitable and sufficient culverts or drains for the natural waters there flowing, that in consequence thereof the plaintiff's land, at various times in the years 1888 and 1889, was overflowed, and great injury thereby caused to the land and to the crops thereon, to the damage of the plaintiff $2,000.

At the ensuing September term the parties appeared by counsel, and by consent the case was set for trial on a later day of the term, to-wit: on the 24th of the month. On the last mentioned day the defendant, by its counsel, moved for a special jury, which motion was overruled. The plaintiff then moved the court to permit the sheriff to amend his return on the writ of summons, which motion was granted and the return amended accordingly. The original return was as follows: "Executed this 25th day of July, 1889, by serving a copy hereof on R. D. Taylor, agent for the Atlantic & Danville Railway Company, in person. (Signed), R. P. Bunting, Jr., sheriff." And the amendment consists in adding to the return the words, "in Norfolk county, in which he resided."

The defendant, by its attorney, thereupon moved for a continuance to the next term, on the ground, first, that before the amendment of the return the case was not legally in court; and, secondly, because of the absence of a witness. But the court refused to grant the motion, and directed the witness to be summoned to attend the court the following day at 11

o'clock, to which hour the case was adjourned. On the last mentioned day the parties again appeared by their attorneys and the defendant pleaded "not guilty," upon which plea issue was joined, and the parties went to trial. The jury returned a verdict for the plaintiff for $1,000 damages, whereupon the defendant moved for a new trial, which motion being overruled, there was a motion in arrest of judgment, which motion also was overruled, and judgment pronounced in accordance with the verdict. The defendant then applied to this court for a writ of error and *supersedeas*, which was allowed.

*Murdaugh & Marshall*, for the plaintiff in error.

*J. F. Crocker*, for defendant in error.

LEWIS, P., delivered the opinion of the court.

The first of the numerous errors assigned is that the circuit court erred in overruling the motion for a special jury. It appears from the bill of exceptions on this subject that the motion was put upon the ground that the case was one "involving questions in which a whole magisterial district was interested, and that it would be almost an impossibility to draw from the 'jury-box' or 'jury-list' a jury that would not contain some name or names from that district, and that there was much prejudice in that district against the defendant company. But" (it is further certified) "there being produced no evidence or affidavits to prove the grounds of the motion, the court overruled it."

The question is thus virtually presented whether the allowance of a special jury is or is not a matter of right. If it is, there was error in overruling the motion. If it is not, then the ruling was correct, although it is believed that, according

to the usual practice in the courts of this State, a request for a special jury is rarely refused.

Blackstone says, in treating of special juries, that they were originally introduced in trials at bar when the causes were of too great nicety for the discussion of ordinary freeholders, or where the sheriff was suspected of partiality, though not upon such apparent cause as to warrant an exception to him.    3 Bl. Comm., 357.    In his treatise on Trial by Jury (section 72), Proffatt, after quoting this passage from Blackstone, lays it down that a motion for a special jury is addressed to the discretion of the court; "and it is evident," he adds, "that certain reasons or circumstances must be presented by a party who makes a motion for the impanelling of such a jury."

In this country it is generally a matter of statutory regulation.    In some of the States a motion for a special jury is allowed as of course, but it is not so in all of them, nor is it so in this State.    The language of our statute, now carried into section 3158 of the Code, is that "any court, in a case where a jury is required, *may* allow a special jury," etc., thus leaving it, as at common law, to the discretion of the court—a discretion, it is true, not arbitrary, but a sound judicial discretion, to be governed by settled principles, and reviewable, when exercised, by the appellate court.    Each case, therefore, must stand upon its own circumstances, and when it appears from a survey of the whole record that injustice has not been done, the judgment of the trial court will not be reversed, although the appellate court may be of opinion that, upon the showing made, a special jury ought to have been allowed.    In such a case the error is not to the prejudice of the party complaining.

Without, therefore, undertaking to lay down any more precise rule on the subject, or to indicate what particular state of facts ought to make it proper to order a special jury, it is enough, for the purposes of the present case, to say that it does not appear that the discretion of the trial court in this

instance has been abused.   The case is not one in its nature of
exceptional difficulty or importance, and the court was not
bound to act upon the unsupported assertion of counsel as to
the existence of a general prejudice against the defendant
company in the particular locality in which the alleged injury
occurred.   And it may be added that if such prejudice did, in
fact, exist, no trace of it is to be found in the verdict, as we
shall presently see in another connection.

The statute, moreover, gives the right to either party to a
suit to have any person who is called as a juror therein ex-
amined on oath, to ascertain whether he is related to either
party, or has any interest in the cause, or has expressed or
formed any opinion, or is sensible of any bias or prejudice
therein ; and it is further provided that the party objecting to
the juror may introduce any competent evidence in support of
the objection, and that if it shall appear to the court that the
juror does not stand indifferent in the cause, another shall be
drawn or called and placed in his stead for the trial of that
cause.   Code, sec. 3154.

Whether this privilege was exercised or not in the present
case does not appear, nor does it appear that any objection to
the jury, that tried the case, or to any member thereof, was
made before the verdict was rendered.

In *Richard's Case*, 11 Leigh, 690, the defendant, who was an
alien and indicted for perjury, moved the court for a jury *de
medietate linguae;* and in deciding the case the general court
was called upon to construe the then statute on the subject,
the language of which was that "juries *de medietate linguae*
may be directed by the courts respectively." It was contended
that this statute was imperative, and that the word "may"
therein ought to be construed as meaning "shall."   But the
court held otherwise, saying it was only intended to confer
upon the courts the ancient common law discretionary power
to direct such juries, if to them it should seem proper.   And
to the same effect is *Brown's Case*, 11 Leigh, 711.

The next question relates to the refusal of the court to grant a continuance on the motion of the defendant. The motion was based upon two grounds. The first was that before the sheriff's return on the writ of summons was amended, there was nothing to show a valid service of the writ, and this is not disputed. *Shen. Val. R. R. Co.* v. *Ashby's Trustees,* 86 Va., 232. But that circumstance did not entitle the defendant to a continuance, especially in view of the fact that the case, by consent, had been previously set for trial on the same day on which the order permitting the amendment was made.

The second ground of the motion was that the defendant had only the day before learned, accidently, that one Trotman was a material witness, and that although a *subpœna* for him hat at once been sued out, it had not been served, and the witness was then absent. The bill of exceptions, however, further states that the court, in overruling the motion, directed the witness to be summoned to attend the court the next day at 11 o'clock, to which hour the case was adjourned. On that day the parties went to trial, and it does not appear that the witness did not attend in obedience to the summons, or that any further question concerning him was raised. No error, therefore, in this particular is apparent from the record.

The next assignment of error is that the circuit court erred in overruling the demurrer to the declaration. No reasons in support of this assignment are given, and, upon a careful inspection of the declaration, we are of opinion that the demurrer was rightly overruled.

The next question is as to the refusal of the court to give the jury the following instructions, offered by the defendant:

"(1). The court instructs the jury that if they believe from the evidence that the plaintiff purchased the property described in the declaration, after the railroad was built and in operation, he cannot recover in this action.

"(2). That there is but one response in damages, on the part of a railroad company, for land taken or injured by it,

under the law of eminent domain, and there is no right of recovery in his alienee, who bought the property after the railroad had been constructed.

"(3). That if the jury believe from the evidence that the cause of the injury complained of be permanent at the time of the purchase of the land in the declaration mentioned, the damages could have been foreseen and estimated, and there is no right of recovery in the alienee, who purchased subsequent to the opening, running and operating of the railroad."

These instructions were rightly refused. Counsel, in support of them, rely upon the recent case of *Chicago, &c., Railroad Company* v. *Loeb,* 118 Ill., 203; but that case widely differs from the case at bar. There the plaintiff, who, after the construction of the railroad, purchased property abutting on a street in which the defendant's tracks were laid, sued the company to recover damages alleged to have been sustained from the operation of the railroad by throwing smoke, cinders and ashes upon the plaintiff's premises. And it was held that such consequences are necessarily inseparable from the operation of a railroad, and must, therefore, be considered as having been taken into consideration in estimating the damages at the time of the original location of the road. "There is no complaint," said the court, "that the railroad is not properly constructed, or that it was not operated in a skillful and careful manner."

The instructions, moreover, are in the teeth of the settled law of this State, as declared in *Southside Railroad Co.* v. *Daniel,* 20 Gratt., 344, 375, in which case Judge Staples, speaking for the court, said:

"All the authorities agree that the assessment of damages, under the statutes applying to that subject, is only a bar to an action for such injuries as could properly have been included in such assessment. The commissioners have the right and are bound to presume the company will construct its works in a proper manner, and they have no right to award dam-

ages upon the supposition that the company will negligently and improperly perform its work. A failure to construct its works in a proper and skillful manner will, therefore, impose a liability for damages to any one who may sustain any loss or injury by reason of such negligence; it being well settled that such damages are not to be considered as included in the estimate of the commissioners."

The plaintiff in that case purchased the land mentioned in the declaration after the construction of the railroad, and the grounds of complaint there were similar to those of the complainant in the present case.

Objection is next made to the action of the circuit court in annulling the motion for a new trial. This motion, also, was based upon two grounds, namely (1), that the verdict was contrary to the evidence; and (2) because of the alleged misbehavior of a juror. As to the first point, the evidence (not the facts) being certified, we must consider the case here as on a demurrer to the evidence; and, viewing it in that light, it is very clear that the verdict is right.

The plaintiff, who was examined as a witness in his own behalf, testified that he is a trucker and the owner of a truck farm, the same described in the declaration; that he purchased it in the year 1887, after the railroad had been constructed through it; that several streams flow through the farm, which are crossed by the railroad; that sufficient drains or outlets for these waters have not been provided by the defendant company, in consequence of which, on several occasions—in the spring of 1888, and again in the spring of 1889—the water was dammed up and overflowed his land on the north side of the railroad, thereby almost entirely destroying his crops on the sixteen or seventeen acres of land on that side of the road, and that the crops on the south side were damaged by the water percolating through the soil from the north side. He further stated that he had about sixty or seventy acres in cultivation, and that his damages were not less than $1,500,

and that, notwithstanding his frequent complaints to the railroad authorities about the matter, they failed to repair the wrong, although they often promised to do so.

Another witness, W. B. Carney, a farmer living in the neighborhood, concurred in the opinion that the drainage provided by the defendant company on the plaintiff's land, was inadequate. He said he had seen the water dammed up there to quite a considerable height, and thought the plaintiff had been damaged, by reason of this insufficient drainage, not less than $1,500. Several other witnesses testified to the same effect, except that they did not state the extent to which, in their opinion, the plaintiff had been damaged. The verdict was for $1,000.

Several witnesses, employees of the defendant, testified on the other side, giving it as their opinion that the drainage was ample. But as this evidence is in conflict with that for the plaintiff, it must be rejected; and if the evidence for the plaintiff shows anything, it shows he has been damaged not less than the amount found by the jury.

As to the second point, namely, the alleged misbehavior of a juror, the facts, as stated in the defendant's seventh bill of exceptions, are these: The plaintiff, in testifying, said he had frequently notified the railroad company of the defective drainage above mentioned, and that "he had not wished to bring suit." Whereupon one of the jurors remarked: ".Then you had to do it in self-defence." The plaintiff then went on to say he had more land in cultivation south of the railroad than north of it, and that the land and the crops on the south side were greatly damaged by reason of the dammed up water on the north side soaking through to the opposite side. At this point the same juror said: "Yes, sir; I know all about it. That's so." The remark, however, does not appear to have excited any criticism at the time, and it is certified as a fact in the bill of exceptions that no objection on that ground was made by the defendant until after the verdict had been ren-

dered.   The objection, therefore, came too late.   The defend-
ant, if dissatisfied with  the remarks of the juror, should have
objected, and called the attention of the court to the matter at
the time, and not have contented himself with taking the
chances of a favorable verdict, and afterwards raising the ob-
jection when the decision had been rendered against him.
Parties ought not to be allowed to experiment with judicial
proceedings in that way.   By their silence, under such cir-
cumstances, they ought to be and are considered as having
waived the objection.

But aside from this, there is nothing in the objection.   It is
evident that the plaintiff in giving his testimony, sought to
produce the impression on the minds of the jury that he was
averse to bringing a suit, and finally did sue only after re-
peated attempts on his part to have his wrongs redressed out
of court had failed.   And it was this, no doubt, that brought
forth the apparently harmless remark of the juror first above
mentioned.   And as to the subsequent remark of the juror,
approving what the plaintiff had just said, and adding that
he knew all about it, that was no more, for aught the record
shows, than complying with the mandate of the statute, which
declares that " a juror, knowing anything relative to a fact in
issue, shall disclose the same in open court."   Code, sec. 3168.

In any view, therefore, the exception was not well taken.

The next and last assignment of error relates to the over-
ruling of the motion in arrest of judgment.   The ground of
this motion was that the declaration filed at rules before the
suit was brought, and not afterwards.   The writ is dated June
27th, 1889, and was returnable to the second July rules of that
year.   The record, as certified by the clerk of the court below,
states that the declaration was filed at the last-mentioned rules,
and the subsequent proceedings at rules, as set out in the
transcript, appear to have been regular.   The defendant, how-
ever, in support of the motion in arrest of judgment, intro-
duced the rule book, from which it appears that the declara-

tion was filed at the second June rules, and upon this ground it is contended that the motion ought to have been granted, and the proceedings dismissed.

A sufficient answer, however, to this position is that by appearing and pleading to the action, the objection was waived. It was certainly too late to raise it for the first time after verdict. As was decided in *Harvey* v. *Skipwith*, 16 Gratt., 410, " objections which do not go to the substance of an action are treated as waived if not made when the occasion for them arises " In that case the sheriff's return on the writ of summons instituting the suit was confessedly defective; but as the objection thereto was not made until after a motion for a continuance and a plea to the merits, it was held to have come too late. It is a well-established rule, said the court, that a defendant by appearing and pleading to the action, or by taking or assenting to a continuance, waives all defects in the process and in the service thereof. By so doing he make himself a party to the record, and thereby recognizes the case as in court, and it is too late for him afterwards to say he has not been regularly brought into court.

In the analogous case of *Creighton* v. *Kerr*, 20 Wall., 8, the court said : "A general appearance waives all question of the service of process. It is equivalent to a personal service. The question of jurisdiction only is saved. If there was error in the commencement of this action by reason of a defective notice or otherwise, it was cured by the appearance."

The principle of these cases applies to the present case, and the judgment must be affirmed.

JUDGMENT AFFIRMED.

LACY, J , and FAUNTLEROY, J., dissenting.