JOSEPH MAYER, Respondent, *v.* JOSEPH LIEBMANN and Others, Appellants.

*Negligence — liability of a brewing company for injuries to an employee from a defective slide — verdict, when not excessive —* laches *in asking that a biased juror be withdrawn.*

Where a brewing company maintains upon its premises, for the purpose of passing kegs from one story to another, a spiral run or slide, the iron rods composing which, and the rivets fastening them, by reason of their having rusted and the rivet holes having become enlarged, open and allow a descending keg to fall upon an employee engaged in removing the kegs from the foot of the slide, the verdict of a jury in favor of the plaintiff will be sustained.

Where the employee so injured is a man thirty-eight years of age, who, prior to the accident, was strong and hearty and earned eighteen dollars a week, and, as a result of the accident, he has been so seriously disabled as to be incapable of performing his ordinary work, a verdict of $5,000 is not excessive.

An application that a juror be withdrawn on the ground that a question put by him to an expert witness showed a bias on his part, should be made at the time of the remark, and a failure to do so until the close of the evidence will be deemed a waiver of the right to apply therefor.

APPEAL by the defendants, Joseph Liebmann and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 17th day

of January, 1896, upon the verdict of a jury, and also from an order entered in said clerk's office on the 20th day of January, 1896, denying the defendants' motion for a new trial made upon the minutes.

*E. J. McCrossin*, for the appellants.

*Charles J. Patterson*, for the respondent.

GOODRICH, P. J. :

The plaintiff was employed by the defendants at their brewery in the city of Brooklyn. He was injured by a beer keg which fell from a run or slide upon which kegs were passing from the ground floor down to the cellar. This run consisted of an iron pillar, around which was a spiral of several turns with an opening in the ground floor into which empty barrels or kegs, some 1,500 or 2,000 daily, were put so that they might pass through the spiral to the cellar floor. The spiral was constructed of five or six iron rods, an inch or two in thickness, which rested upon and were fastened to five arms or brackets by rivets passing through holes in the rods and brackets. The heads of the rivets were hammered down on the upper side of the rods. There was evidence tending to show that one or more of these rivets on one of the middle brackets had broken away, owing to the enlargement of the hole in the rod by rust or decay of the iron, the rapid descent of the barrels and the shaking movement of the rods which had thereby become detached from the bracket, causing a separation of some of the rods and making an opening in the spiral through which a descending keg fell and struck the plaintiff, who was standing at the foot of the run engaged in taking away the kegs, causing him serious damage; that he was rendered unconscious, was taken home, remained under medical treatment for ten days, when he attempted to resume work in the brewery, continued it for two days, but was obliged to desist, was again confined to his bed for two weeks, has been more or less incapacitated, and suffers continual pain with tremor and dizziness, which prevents and destroys his ability to perform his ordinary work, and that from being a strong and healthy man he has become seriously disabled.

There was medical testimony tending to show that this disability resulted directly from the accident, and contradictory evidence that it was caused by heart disease not resulting from the accident. Upon this conflicting evidence the jury rendered a verdict for the plaintiff for $5,000.

The question arises whether the defendants were guilty of negligence. They contend that the defect complained of was one arising in the daily use of the run which could not have been anticipated by any care on their part; and that the plaintiff first had notice of the defect. They rely on the case of *Cregan* v. *Marston* (126 N. Y. 568, 572), where, at page 572, the court said: "It is undoubtedly true, as we have often said, that it is the duty of the master to keep a machine or appliance in order, and that he cannot delegate the duty so as to escape responsibility. But that is a general rule and has its qualifications and limitations. One of those is that it is not the master's duty to repair defects arising in the daily use of the appliance, for which proper and suitable materials are supplied, and which may easily be remedied by the workmen, and are not of a permanent character, or requiring the help of skilled mechanics."

The evidence in the case at bar removes the accident from the category of this principle. There was evidence tending to show that the rivet holes in the rods and brackets had become enlarged by long use and by the descent of many kegs daily, and that the rods and rivets had become rusty, decayed and weakened, so as to render the run incapable of sustaining the strain to which it was subjected. No evidence was given to show any examination of the run for two weeks before the accident. The court submitted to the jury the question as to the safe condition of the run, and they have found that it was not in proper condition.

The defendants contended that they furnished proper appliances to make the run safe, and the court, at their request, charged: "That if this run was reasonably safe for the purpose it was intended for, and a part of it required occasional renewal from the wear and tear of the use for which it was intended, and the employer provided sufficient means for such renewal and employed competent workmen to make the repairs, the plaintiff cannot recover." And the jury by their verdict have negatived the contention of the defendants.

The defendants also insisted that the plaintiff had the same means of knowledge of the defects in the run as the defendants had, and, therefore, that he assumed the risks and could not maintain an action for injuries which he sustained by reason of such defects.

The plaintiff testified that he did not know of anything wrong in the run, and it appeared that, two weeks before the accident, some part of it had been repaired, and that this fact the plaintiff knew. The defendants' engineer testified that the rivet holes became worn and enlarged by the use of the run; that, from time to time, larger rivets were inserted, and that if good iron were used in them they should last for six months, so that the plaintiff had no reason to anticipate a defect in the run, since it had been examined and repaired two weeks before the accident. It also appears that it was no part of the plaintiff's duty to repair defects, and he had the right to rely upon the belief that his employer would furnish safe appliances, nor was he obliged to inspect the run to determine its sufficiency. That duty devolved upon the defendants, and there was sufficient evidence to charge them with notice of this condition.

There was ample evidence to justify a finding by the jury that the rods of the run broke away from their fastenings to the brackets by reason of their defective structural condition, or that of the rivets, and there was no sufficient evidence in the case to overcome the testimony of the inherent weakness of the run.

The counsel for the appellants claims that the verdict was excessive, and bases his argument upon the fact that the plaintiff had suffered injury in a previous accident, but we do not find evidence sufficient to show that his physical condition, at the time of the trial, was in any way consequent upon such accident. The plaintiff was thirty-eight years of age, strong and healthy, earning eighteen dollars a week, and, under these circumstances, we cannot affirm that the verdict was excessive.

It is also contended by the counsel for the appellants that during the trial one of the jurors, in questioning Dr. Johnson, a medical expert, who was the defendants' first witness, said: "We heard what the physician said yesterday; he stated what was pretty correct, with all due respect to you," and that this remark showed such bias on the part of the juror as made it the duty of the court to with-

draw him and thus suspend the trial. We do not take this view of the circumstance, and are confirmed in this opinion by the fact that the application to withdraw the juror was not made at the time of the remark, but at the close of the whole evidence on the following day. If there were merit in the motion, the defendants waived the right by their long delay in making it.

We have carefully examined the other exceptions and find no error in the rulings of the learned court for which the judgment should be reversed.

The judgment should, therefore, be affirmed, with costs.

All concurred.

Judgment and order unanimously affirmed, with costs.