State vs. Cook.

## No. 13,219.

### THE STATE OF LOUISIANA VS. JOHN COOK.

### SYLLABUS.

1. The change effected by Act No. 135 of 1898, whereby petit juries are selected from thirty jurors drawn from the general venire box, instead of being selected from thirty-four jurors so drawn, is a change in the mode of procedure which does not alter the situation to the disadvantage of a person tried under the Act of 1898 for a crime committed while the Act of 1896 was in force, and the operation of the Act of 1898 is not, therefore, *ex post facto*.

2. Ruling of the judge *a quo* refusing a continuance in order to enable a defendant charged with murder to obtain the attendance of a witness to prove threats by the deceased, will not be reversed when it appears that there had been a mistrial from which the judge was in a position to know that the defendant would not, probably, be able to lay the foundation for the introduction of such evidence; when as a matter of fact such evidence was actually offered on the second trial and excluded because no foundation had been laid, and when in defendant's motion for new trial it is not claimed that the evidence of the absent witness could have been offered if he had been present.

3. Whether remarks made by a juror in the presence of other jurors and of the deputy sheriffs in charge whilst a case is being tried amount to such misconduct as would justify the setting aside of the verdict, depends upon whether the remarks, considering all the circumstances, were of a character to justify the conclusion that the juror was an unfit person to discharge the duty imposed on him.

A PPEAL from the District Court for the Parish of St. Tammany. *Reid, J.*

*M. J. Cunningham,* Attorney General, and *D. S. Kemp,* District Attorney, for Plaintiff and Appellee.

*Paul W. Roussel, P. B. Carter* and *H. N. Gautier,* for Defendant and Appellant.

The opinion of the court was delivered by

MONROE, J. Defendant appeals from a verdict and sentence, finding him guilty of murder, without capital punishment, and condemning him to imprisonment, at hard labor, for life, and his counsel presents the following points to this court, to-wit:

## I.

That he was indicted for a crime said to have been committed in September, 1896, and was arraigned and pleaded "not guilty," January 27th, 1897; that under the law as then existing, the names of fifty persons were to be drawn from the general venire, from among whom sixteen were required to be selected to serve as a grand jury, and from the remaining thirty-four the petit jurors were to be drawn. That he was not tried until May 15th, 1899, when, under the act of the General Assembly, No. 135, adopted in 1898, the petit jury was required to be made up from thirty jurors drawn from the general venire. He claims that he had a vested right to be tried by a jury drawn, or made up, from thirty-four jurors, and that the act of 1898, reducing the number, from which said jury was to be drawn, to thirty, is *ex post facto* in its operation, and is prejudicial to his rights. The question was presented to the court *a qua* in the form of a challenge to the array and a motion to quash, to the overruling of which a bill of exceptions was reserved.

The present Constitution, adopted in 1898, provides for the trial of certain crimes and offences without juries, and for the trial of others by juries composed of a smaller number than twelve, in these respects making a change in the constitutional and statute law.

Whether this change was to be regarded as merely affecting the methods of procedure, or as affecting and divesting vested rights, in cases of crimes and offences committed before its adoption, was considered by this court in the matter of *"State ex rel. Sherburne vs. Judge,"* 50 Ann. 1247; where it was held that, in so far as the provisions of the Constitution of 1898 may be invoked as authorizing a trial, without a jury, of an offence which, when committed, was required to be tried by a jury, such provisions are *ex post facto* in their operation and can not be enforced. In this opinion, that of the Supreme Court of the United States in the matter of *Thompson vs. Utah,* 170 U. S. 343, is referred to, and the doctrine of the latter opinion is adopted. The opinion thus referred to, and accepted as correct, relates to a case where a person who had committed a felony in the territory of Utah at a time when the Constitution and laws of the United States entitled him, as the court holds, to a trial by a jury of twelve, was tried after Utah became a State and under a State Constitution and

a statute law which provided for such trial by a less number than twelve.

The Supreme Court of the United States held that the crime having been committed in a territory, the question of the rights of the accused, with respect to his trial, was to be determined by the Constitution and laws of the United States then and there in force; that, thereunder, he was entitled, when the crime was committed, to a trial by jury, and that a trial by jury meant a jury of twelve and, hence, that he could not lawfully be tried, under State laws, constitutional or statutory, subsequently enacted, which provided that he should be tried by a jury of less than twelve. The basis of this decision was that the jury of twelve was the jury contemplated by the law under the dominion of which the crime was committed, and that to deprive the accused of the right to be tried by such a jury was to deprive him of a substantial and vested right and alter his position to his prejudice. The court, however, was particular to disclaim any intention of shaking the established jurisprudence to the effect that a change in the manner of proceeding, after the commission of an offence, does not, necessarily, deprive the accused of any substantial right, and is competent legislation when no such deprivation results. The following is the language of the opinion on that subject, to-wit:

"It is not necessary to review the numerous cases in which courts have determined whether particular statutes come within the constitutional prohibition of *ex post facto* laws. It is sufficient now to say that a statute belongs to that class which, by its necessary operation, and 'in its relation to the offence, or its consequences, alters the situation of the accused to his disadvantage.' * * * It is well settled that the accused is not entitled of right to be tried in the exact mode, in all respects, that may be prescribed for the trial of criminal cases at the time of the commission of the offence charged against him. Cooley, in his treatise on Constitutional Limitations, * * says: 'But so far as modes of procedure are concerned, a party has no more right, in a criminal than a civil action, to insist that his case shall be disposed of under the law in force when the act to be investigated is charged to have taken place. Remedies must always be under the control of the Legislature, and it would create endless confusion in legal proceedings, if every case was to be conducted only in accord with the rules of practice, and heard only by the courts in existence, when its facts arose. The Legislature may abolish courts and create

new ones, and it may prescribe altogether different modes of procedure, in its discretion, though it can not lawfully, we think, in so doing, dispense with any of those substantial protections with which the existing law surrounds the person accused of crime,'" etc.

The question in the present case, then, is whether the accused has been deprived of any substantial protection or right, by reason of the fact that the twelve men constituting the jury by which he was tried, were selected from a list of thirty, drawn from the general venire, under Act No. 135 of 1898, rather than from a list of fifty, after sixteen have been withdrawn to serve as grand jurors, as provided under Act No. 99 of 1896. And this question, we think, should be answered in the negative. The substantial right of the accused to be tried by a jury of twelve is preserved. There is nothing to indicate or suggest, that twelve men, selected from thirty. whose names are drawn from the general venire, would not be, in all respects, as competent as twelve men selected from thirty-four similarly drawn. The change in the law merely relates to the manner of obtaining the jury, and it has been held, and may be regarded as well settled, that such a change affects the mode of procedure without affecting any right of the accused, or altering the situation to his disadvantage.

A. & E. Enc. of Law, Vol. 7, p. 531; State vs. Caldwell, 50th Ann. 669.

## II.

The next point is presented by a bill of exception to the ruling of the judge *a quo* in refusing to continue the case in order to enable the accused to procure the attendance of a witness to prove threats on the part of the deceased. The judge gives the following reasons for refusing the continuance, to-wit:

"The court overruled the motion for a continuance, based on the absence of the witness H. E. Burris, because the testimony of Burris, as set out in the application, would have been inadmissible. There had been a mistrial in the case, on account of the sickness of a juror. The court was familiar with the testimony and with the facts as developed on said previous trial, and thoroughly convinced of the inadmissibility of the testimony, and therefore declined to grant a continuance to secure the attendance of the witness. On the trial of the case, the defendant offered testimony of the same character as Burris', which, on objection by the State, that the proper foundation

had not been laid, was excluded by the court, in which ruling defendant acquiesced. The testimony showed deliberate preparation by the defendant, several hours in advance of the homicide, and that he declared his purpose, to run the deceased, to several persons, before he went out into the woods, where he knew the defendant (deceased) was at work, and took his life. There were no eye-witnesses to the homicide, but upon defendant's own testimony, in connection with the physical facts, the homicide was a clear case of murder."

Under the settled jurisprudence, evidence of threats, in justification of homicide, is admissible only after proof of an overt act or hostile demonstration on the part of the deceased. *State vs. Hickey,* 50 Ann. 600; *State vs. Wiggins, Ib.* 330. The record in the case before us shows that it had been once so far tried, that the evidence had been offered, so that the district judge was in a position to know in advance of the second trial, whether it was likely to be within the power of the accused, upon such trial, to lay the foundation which he had been unable to lay upon the first trial. Being of the opinion that the accused would be unable to lay such foundation, and the application for continuance containing no averment to that effect, the continuance was properly refused. If, upon the second trial, it had appeared that the accused was in a position to prove some overt act, or hostile demonstration, by the deceased, and thus open the way for the introduction of the testimony of the absent witness, the matter could have been called to the attention of the court by motion for new trial, and thereafter presented to this court. No such claim is made, however. Upon the contrary it appears that such testimony as it is claimed the absent witness would have given, was offered on the second trial, and that the ruling of the court excluding it was acquiesced in; we, therefore, conclude that the discretion vested in the trial judge was properly exercised.

State vs. Cane & Hunter, 36th Ann. 53; State vs. Finn, 31st Ann. 408; State vs. Johnson, 36th Ann. 852; State vs. Hollier, 49th Ann. 371; State vs. Johnson, 47th Ann. 1227.

### III.

The motion for new trial, to the overruling of which a bill of exception was reserved, is based upon grounds already considered, and upon the additional ground, that the defendant, as he alleges, has been prejudiced by the action of one of the jurors, who, while under

injunction from the court forbidding him or any other juror from commenting on the case in the presence of the deputy sheriff or other person, persisted in commenting upon the evidence and in expressing an opinion adverse to the defendant, before the evidence had all been taken, and before the jury had received the charge from the court.

The evidence in the record does not sustain the averments contained in the motion. The facts appear to be that Tobe Summers, who was foreman of the jury, was a man of nervous, excitable, temperment, and, during the trial, when the court would take a recess, would, as the sheriff testifies, "be the first man to jump up and try to run out ahead of the other jurymen." He was warned about this, and, as a matter of fact, was not allowed to separate himself from the other jurors.

It also appears that upon one occasion, during a recess, whilst in the presence of several of the jurors, and of the two deputy sheriffs, who had charge of the jury, he made some remark, which led to another member of the jury warning him "that they should not talk about anything; that they were not allowed to talk in front of the deputy sheriffs." What the remark was, does not appear. The deputy sheriff, who testifies concerning it, said, in answer to the question: "Can you remember any part of the remark, or the substance of it, made to the gentlemen?" "A. No, sir; something about what a witness said, or was going to, or something like that."

It also appears that, after the testimony had been taken, and the District Attorney had addressed the jury in opening, the court took a recess, during which Summers, in presence of the deputy sheriffs, in charge, and of the other jurors, said: "That damn man is guilty." This fact is testified to by one of the deputies. Whether the remark was heard by the other deputy or by any one else is uncertain. The deputy who testified, said, upon the subject, i. e., as to whether the other jurors could have heard: "I suppose they could, but they wasn't paying any attention to it." He also says that he warned Summers to "hush," and whilst the latter replied rather fiercely, he seems to have made no further remark.

We find nothing in this to justify a reversal of the ruling of the judge a quo refusing the new trial. The fact that the juror was an excitable man, and, when the court took a recess, started out ahead of the other jurors, did not amount to a separation of the jury, because

he was stopped before the separation was effected. The remarks made by him were casual, and there was no such persistence as to indicate that the juror was incapable of appreciating his duties or responsibilities.

The particular remark which indicated an opinion as to the guilt or innocence of the accused, and, in fact, the only one which is given by the witnesses, was made after the jury had heard the entire evidence in the case, and the opening argument of the prosecution. Unquestionably it should have been left unmade, but the fact that it was made, does not, under the circumstances, lead to the conclusion that the juror was either an unfair, or an incompetent one, or that he had any undue bias or prejudice against the accused. The judge, in the bill of exceptions signed by him, says, concerning the averment in the motion for new trial, that the verdict was contrary to law and to the evidence: "If so, it was not to the defendant's prejudice; the evidence would have justified an unqualified verdict, in the opinion of the court."

For these reasons, it is ordered, adjudged and decreed that the judgment appealed from be affirmed.

Rehearing refused.