THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* JULES SPIEGEL, Defendant.

Court of General Sessions, New York County, November 9, 1933.

*Thomas C. T. Crain, District Attorney [Henry Alexander, Assistant District Attorney, of counsel], for the plaintiff.*

*Maurice R. Whitebook, for the defendant.*

FRESCHI, J.   The defendant has renewed his motion to set aside the verdict of the jury convicting him of the crime of grand larceny in the second degree.   On the day of the rendition of the verdict a formal motion to that end was denied, and thereafter, for the first time, counsel for the defendant made known to the court that he had information regarding alleged misconduct on the part of one of the jurors that would form the basis for a renewal of such a motion if the court would grant leave to the defendant to submit formal proof by oral testimony as to the facts upon which it was predicated. Permission having been granted, subpœnas were issued upon order of the court through the district attorney, and they were served in the court room upon the witnesses whom defendant's attorney had named.

On October 31, 1933, these witnesses were examined in open court in support of defendant's motion for a new trial, in opposition to which the district attorney offered the testimony of the juror in question and that of a corroborating witness.

From such testimony it appears that, on Thursday night, October 26, 1933, following the summation by defendant's counsel and before the summation of the district attorney and the charge of the court, which took place on October 27, 1933, both Katherine Poillon and Charlotte Poillon, the said witnesses for defendant on the motion, were at a political meeting held that night at the corner of Broadway and Seventy-first street, and that while they were seated together in the center of the room, the sixth juror, Samuel Gumbinner, entered and greeted them.

The defendant's witness, Katherine Poillon, testified that the saia juror, whom she and her sister had met for the first time during the primaries in September, 1933, and frequently thereafter at the Fusion headquarters, addressed them as follows: " Hello; how are you? "   And then this colloquy ensued: " Fine, how are you? " He said: " I am tired.   You know I am on the jury in General Sessions, Part 7.   We are trying a fellow down there that advertised for agents to collect rents and he took their deposits.   I am going to give it to him in the neck.   I am going to convict him.   We get the case to-morrow, and he will be convicted.   Well, I'll see you later.   Good-bye."   The name of the defendant was not mentioned at that time.   It seems from the testimony offered by the defense

that this juror had never before spoken to the said witnesses about the case, and there was no further conversation relating to it, except as appears in the testimony of Charlotte Poillon, who claims that after this conversation she went over to the juror, who was then in the back of the room. Her testimony in this particular reads as follows: " I went over to him and he [the juror] asked me if I knew the man who was on trial, and I said: ' No, I do not know him,' and he said his name was Spiegel." She further testified that she asked him for the defendant's name, and that at the time of this latter conversation she was alone and not accompanied by her sister. Later, both sisters testify, they discussed the seriousness of the matter and say that they regarded it as part of their " civic duty " to report the matter and " to get in touch with somebody that the Court might know what this man was doing." And when asked what her purpose was in inquiring about the defendant's name, the witness Charlotte Poillon answered: " I thought if it was somebody I knew; I knew who his lawyer would be and I would immediately go to his lawyer's house that night." Instead, on the following morning, Friday, October twenty-seventh, these two sisters came to the Criminal Courts Building, went to the clerk's office to inquire about the attorney in the case, and finally met and told defendant's attorney about the conversation had with the juror. In this particular she testified: " I told him that the juror in this case had had a conversation with me, and that his client was going to be found guilty. I asked him to come into court and tell the Judge, and he said: ' Wait outside.' And I waited outside, and then after a while he came out and told me to come in the court, and I started to follow him in, but the officer on the door put up his hand and said: ' You can't go in; the Judge is about to charge.' And I was not allowed to enter the court-room."

The cross-examination of Charlotte Poillon elicited a very important fact that seems to bear out the claim of the juror that there was another man present when she spoke to him in the rear of the meeting hall. The witness further testified in answer to the following questions by the district attorney: " Q. Were there others there near Mr. Gumbinner when you spoke to him? A. When I spoke to him about the name of Spiegel? Q. Yes. A. Yes, there was a young man selling tickets for an affair there. Q. What did you say to Gumbinner at that time? A. I said: ' Do I know that defendant? ' And he said, ' No, I don't think you do — his name is Spiegel.' Q. Yes? A. That's all. Q. That's all you said to him? A. That's all."

Mr. Grumbinner, the juror in question, testified that on many other occasions he served as a juror; that he knew both of these

women; that they were habitues of the said Fusion headquarters where he was in charge as campaign committee assistant; and that he met Charlotte Poillon there once in September. He testified that she borrowed some money after her sister's [Katherine] " supposed accident up in Mount Vernon or New Rochelle to get up " there. He admits seeing both of them Thursday night, October twenty-sixth; and in testifying to what transpired then, the juror testified as follows: " A. I think we were dismissed around 4 o'clock in the evening or possibly 10 minutes after four and I usually went up the subway with two gentlemen sitting back there; we went up together. I got off at 72nd. Before going home, I stopped in Headquarters — it may have been around a quarter to five — and as I walked in the door somebody called me from the rear. While walking back either one or both — I won't say — of these sisters said, ' How are you coming out in that case? ' Then I simply looked that way [indicating] and walked back to this supposed office of ours and somebody asked me a question or two and then came up — I won't say which one, or whether it was both — and they said, ' How are you going to find in that case? ' I said, ' I am too old a juror. I don't discuss these things in a public place like this.' I said, ' I have been a juror over a period of 40 years, probably 20 times, and those things don't belong here.' That's all. There is a gentleman here who can verify that. I did not know it until last night, that a gentleman heard it. Q. Then, specifically, you say you did not say to either one of these women that you were trying a man for grand larceny, that he had gotten money as deposits from people who had answered advertisements and that you were going to give it to him in the neck — you had no such conversation with either one of these women? A. Having heard of their reputation in the last two months, they would be the last persons on earth I would say that to."

On cross-examination the juror was asked this question and made this answer: " Q. When they said, ' That case,' how did you know they referred to the case you were sitting in as a juror? A. I can readily explain that. I used to come up and some of my committeemen or captains would ask me, ' We didn't see you all day.' I said, ' I am busy as a juror down in General Sessions; when I am through there I come uptown,' and the last week they were saying, ' Well, how about to-morrow? ' I said, ' I am still on that case.' "

Samuel Harris, a witness called by the district attorney, testified that he had been an assistant clerk in the Municipal Court and was one of the Republican captains present at the said political headquarters that night; that he saw both of these women and that when Gumbinner was passing him he heard him say: " You shouldn't ask

me that; I don't talk out of court." Thus we have presented a sharp conflict of testimony as to what transpired between the juror and the two witnesses produced by the defendant. The credibility of these witnesses in support of and in opposition to this motion presents a question of fact. As affecting the credibility of the witnesses for the defense and the quality of their evidence, the district attorney has shown a prior conviction involving both of them in a misdemeanor for which they served prison sentences, although they explained that those cases like others mentioned in their testimony were the result of alleged " frame-ups."

The defendant was properly safeguarded at the trial; and in ascertaining the truth on the conflicting testimony, the jury took a reasonable view of the evidence which does not permit a conclusion favorable to the defendant on the issue as to his guilt or innocence.

After opening the inquisitorial phase of the case on this motion, and examining my notes of the testimony of the whole case, the conclusion inevitably is that the verdict, arrived at in this instant case, was reached according to adducement of testimony and the weight of credible evidence, as well as on the law of the case, without resort to any extraneous evidence. The jury, within their province, pronounced the defendant guilty as charged, and there is sufficient evidence fairly to justify such finding and verdict.

Under these circumstances and because of other considerations which I shall mention presently, I am of the opinion that, on the facts and the law, it would be improper to set aside and annul the finding of the jury in this case.

A motion for a new trial made under the provisions of section 465 of the Code of Criminal Procedure, as a general principle, is addressed primarily to the conscience and sound judicial discretion of the trial judge before whom such a motion is made; and all the New York cases that have come to my attention hold that " irregularities in the conduct of the jury, not shown to have prejudiced the substantial rights of a defendant will not vitiate the verdict." (See, also, Bowers Judicial Discretion of Trial Courts, § 531.)

" Each application must be determined mainly upon its own peculiar facts and circumstances, and should be granted or refused with a view not so much to the attainment of exact justice in a particular case as to the ultimate effect of the decision upon the administration of justice in general." (*Sales* v. *Maupin*, 35 S. D. 176; 151 N. W. 427; Ann. Cas. 1917C, 1222; *United States* v. *Pleva*, 66 F. [2d] 529.)

The motion now before the court is not made on the ground that the juror was in any way disqualified to act as a juror, as, for

instance, was the case in *Clark* v. *United States* (289 U. S. 1; 77 L. Ed. 515).

I do not think that upon the testimony presented on behalf of the defendant on this motion the court would be justified, in the exercise of a sound discretion, in granting a new trial on any of the grounds urged by the defense. The verdict having been arrived at by the jury after due deliberation should not be disturbed by this court unless the defendant, in order to successfully attack the verdict, can show by more conclusive proof that his substantial rights have been prejudiced and that the ends of justice require the setting aside of the verdict and the granting of a new trial. (*People* v. *Menken*, 36 Hun, 90, at p. 99.) Where the guilt of the accused as charged is firmly established by the evidence, the verdict of the jury should not be set aside on an alleged irregularity. (*People* v. *Sprague*, 217 N. Y. 373, 381.)

In the instant case the jury had heard all the evidence adduced on both sides and the summation of counsel for the defendant at the time of the alleged conversation between the said witnesses (Poillon sisters) and the juror. There remained the summation of the district attorney and the charge of the court scheduled for the following morning.

The accused is always entitled to a fair and impartial trial by a constitutional jury. It is a right which in criminal cases cannot be waived; but a verdict will not be set aside merely because the jury did not possess certain established qualifications where objection to the juror is not made. (*People* v. *Cosmo*, 205 N. Y. 91.) As was stated by Judge WERNER in this latter case (at p. 96): " It must follow that if the right itself cannot be waived, neither can there be a waiver of anything that is essential to full benefit or protection which the right is designed to safeguard." (Citing *Cancemi* v. *People*, 18 N. Y. 128, 136.)

In many instances, according to the peculiar circumstances of a given case of which the accused has knowledge, he may be held to have waived certain mistakes or irregularities or misconduct by a juror concerning whose competency and qualifications there is no question. These may be regarded as matters personal to the individual defendant which in no wise affect the jury system as a sacred institution or the administration of justice as a whole.

Where fundamental rights though are involved, a motion should be made at the earliest possible opportunity to discharge the jury and for a mistrial where the trial has not terminated, in order that the court may speedily and fairly inquire into the conduct of the juror so as to determine his fitness further to serve. If the objection is merely technical and is withheld by a defendant and in nowise

affects his intelligence and fairness, it can be regarded as waived in certain given cases; otherwise " no judgment would ever be safe from attack, and no trial could ever be confined to anything like well-defined or limited issues," to use the language of Judge WERNER in the *Cosmo Case* (*supra*). (See, also, *People* v. *Caputalo*, 138 Misc. 344.) Such a motion, when made on behalf of a party after the verdict, " is not compatible with good faith." Suppose that, in the selection and acceptance of a juror, the accused is apprised of an unfavorable opinion entertained by the juror; that point is not available later to set aside an unsatisfactory verdict. Wharton's Criminal Procedure, volume 3, tenth edition, section 1830, says: " It is also well settled   *   *   *   that objections to the competency of jurors, on the ground of pre-adjudication, must be taken before impaneling, or at the time when the party becomes first acquainted with the objection." By analogy, the principle applies here. The objection, coming after the verdict, is too late and does not warrant the granting of a new trial. In *People* v. *Menken* (*supra*, at p. 99) the court held: " It has been held in numerous cases that an irregularity which did not prejudice the substantial rights of the defendant ' would not vitiate the verdict unless it be shown that the defendant was prejudiced thereby.' "

Where the objections are not strictly legal and technical but do go to the character of the juror and show that he labored under prejudices and prepossessions which rendered him incapable of acting impartially in the case, and that in all human probability there has not been a fair trial, it would be competent and proper for the court to set aside a verdict; but such objections must be characterized by very strong and peculiar circumstances, as was stated by Mr. Justice SUTHERLAND in *People* v. *Jewett* (6 Wend. 386, at p. 389). The Court of Appeals in the *Cosmo Case* (*supra*) said that this was " an accurate expression of a sound rule, which may without injustice be applied in all criminal cases."

Corpus Juris, volume 16, section 2651, says: " The expression of an opinion adverse to defendant during the trial, or while deliberating upon the verdict, or after the verdict, does not necessarily show that the juror was prejudiced at the time he was sworn, and does not of itself require a new trial." Corpus Juris illustrates that as follows. " A remark by a juror that ' That damn man [defendant] is guilty,' made after the jury had heard all the evidence and the opening argument of the prosecution, does not show that he was unfit to act as a juror. (*State* v. *Cook*, 52 La. Ann. 114, 119.) " It gives another illustration: " A remark of a juror in the presence of the other jurors, not based on any independent information but simply an inference drawn from the statement of the accused and the

evidence, is not ground for a new trial as showing prejudice. (*State* v. *Rideau*, 116 La. 245.) "

Thompson on Trials (2d ed.), section 2558, page 1838, has this to say: " Communications by the jurors to third persons, not of the jury, are material only so far as they disclose misconduct on the part of the juror making them, or a disregard of the improprieties of his position, or an unfitness to discharge its duties, and, consequently, as a general rule, afford no ground for a new trial, especially if brought to the attention of the counsel for the unsuccessful party and not by him objected to at the time, unless of such character as to lead to an unavoidable inference of passion, prejudice or want of appreciation of a juror's duties and responsibilities."

In Wharton on Criminal Procedure, volume 3, tenth edition, page 2235, we find this statement: " Juror expressing opinion, during the progress of the cause, after the evidence was opened, as to the guilt of the defendant, in the hearing of bystanders, it was held that though in so doing he was guilty of gross misconduct, it was no cause to set aside the verdict. *Com.* v. *Gallagher*, 4 Pa. L. J. 512, 2 Clark (Pa.) 297. See *State* v. *Ayer*, 23 N. H. (3 Fost.) 301; *Brakefield* v. *State*, 33 Tenn. (1 Sneed) 215."

As a matter of fact, this alleged statement of the juror was brought to the attention of the counsel for the defendant before the district attorney's summation and the charge to the jury, and, therefore, before the case was submitted to the jury for determination. Counsel had knowledge on the subject and withheld it. He should have brought the matter to the attention of the court immediately. He preferred to wait and take his chances with the verdict of the jury; and only when it was adverse to his client did he decide to call the matter to the attention of the court.

Corpus Juris, section 2670, subdivision 2, says as follows: " As a rule, a new trial will not be granted where the party asking for it participates in the misconduct, or knowing of it fails to call the attention of the court to it promptly and to move for the dismissal of the jury, although there is some authority to the contrary." Flagrant misconduct of a juror, such as visiting the premises and talking to the defendant has been regarded as a violation of the strict forms and rules prescribed for the due administration of the criminal law. (*People* v. *Tyrrell*, 3 N. Y. Crim. Rep. 142, 144; *People* v. *Gallo*, 149 N. Y. 106.)

In *People* v. *Flack* (57 Hun, 83, at p. 96) the court says: " It is also clear that whatever rights the defendants may have had by reason of the happening of this incident [the intrusion of a *World* reporter into the jury room during their deliberations], they were waived by the subsequent conduct of the defendants and their counsel. After

they had full knowledge of the facts they permitted the trial to go on and the jury to be sent back without objection, and asked the court to give instructions to the jury on their behalf, the refusal to give some of which forms one of the grounds upon which this appeal is founded. Under such circumstances, the defendants cannot now be heard to claim immunity because of this alleged irregularity. They had their opportunity to object to the sending back of this jury. They did not, and they cannot now be allowed to assume the position of speculating upon the verdict of the jury; if it was in their favor, they would be discharged; if against them, it would be set aside." (See, also, *Walsh* v. *Matchett*, 6 Misc. 114.)

We are all agreed that the minds of the jury must always be kept open until they reach a verdict. When they came into action to deliberate and judge for themselves, it cannot be justly said that during the deliberations here this juror was mislead or biased in the result reached. No deception was practiced by this juror either when he was accepted or in the course of the trial to the material injury of the defendant who is entitled to a fair trial before an impartial jury. There is nothing here of any abuse by the juror of his privilege such as would warrant searching the debate and ballots of this jury to ascertain whether there is anything to impair the impartiality of the jury or the freedom of its verdict according to the conscience of the men constituting the jury. And I see no valid ground that compels me to impeach this verdict. I cannot hold this juror discredited in the light of the testimony before me.

In 16 Annotated Cases, pages 175, 176, the editors' footnote to *McKahan* v. *Baltimore & Ohio R. R. Co.* (223 Penn. St. 1), dealing with an " Expression of Opinion or Prejudice by Juror During Trial as Ground for New Trial," states: " Remarks that do not indicate any bias or prejudice in the mind of the juror previous to the trial, but disclose only the impressions produced upon his mind by the evidence adduced, do not constitute ground for a new trial. * * * ' If the entertainment of an opinion on the subject matter of a trial, by a juror during its progress, furnished ground for new trial, no litigated matter could be brought to a close, for from the very constitution of the human mind, opinions will be formed, as facts are disclosed or reasons addressed to the understanding, liable to be and frequently changed, as these facts and reasons are met and confuted by others of an opposite tendency.' *Com.* v. *Sallager*, 3 Pa. L. J. Rep. 127, 4 Pa. L. J. 511, wherein it was held that the fact that after the testimony on the part of the commonwealth was closed, and a part of the prisoner's given, a juror entertained an opinion that the accused was guilty, was no reason for granting a new trial. But it was said that ' a different case would have been presented

if it had been shown that this open declaration of opinion had influenced him to turn a deaf ear to the evidence subsequently given on the part of the defendant; but in the absence of proof we cannot suppose that dogged obstinacy or pride of opinion once expressed, triumphed over the obligations assumed on entering the jury box, to listen to and fairly weigh the whole evidence.' "

The footnote continues on page 177 and says, in part: " An objection to the misconduct of a juror in expressing an opinion or prejudice during the trial, if known to the party at the time of its occurrence and not made the subject of a motion to the court, is waived. A party who knows during the trial of a fatal objection arising from the misconduct of a juror upon the trial cannot be permitted to be silent and to take advantage of it in the event of an adverse verdict. He should not be permitted to ' speculate upon the chances of a verdict.' *Berry* v. *De Witt*, 23 Blatchf. [U. S.] 544; 27 Fed. 723, citing *State* v. *Tuller*, 34 Conn. 280; *Martin* v. *Tidwell*, 36 Ga. 332; *Chicago, etc., R. Co.* v. *Krueger*, 23 Ill. App. 639, 124 Ill. 459, 17 N. E. 52; *Atlantic, etc. R. Co.* v. *Peake*, 87 Va. 130, 12 S. E. 348. See, also, *Monaghan* v. *Pacific Rolling Mill Co.*, 81 Cal. 190, 22 Pac. 590."

An objection to a remark of a juror on the ground that it shows bias must be made at the time of the remark; if not made until the close of the whole evidence the objection will be deemed to have been waived. (*Mayer* v. *Liebmann*, 16 App. Div. 54.)

Adopting the language of the late Mr. Justice WILLIAMS in *People* v. *Bishop* (66 App. Div. 415, at pp. 420, 421): " We agree that motions of this kind should be very carefully considered and the affidavits closely scrutinized, and that no mistake should be made in setting aside verdicts by reason of attacks made upon jurors after the trials have been had, and verdicts of conviction rendered; that unless great care is exercised abuses are liable to grow up and charges against jurors to be falsely made after convictions are had, for the purpose of relieving accused persons from convictions for crimes."

Unless the verdict is shown to have been influenced in some way by passion, prejudice, mistake, perversion or corruption, the court will not interfere with it; and in view of the uncertain and unreliable supporting testimony here submitted and the improbability as to the whole truth in relation to the conversation as claimed by the defendant, I find that no wrong has been done this defendant. (See *People* v. *Draper*, 28 Hun, 1; *People* v. *Johnson*, 110 N. Y. 134, 143; *People* v. *Fish*, 125 id. 136, 144, 145.)

His motion must be denied.