Benjamin Brenner, J.
This is a renewed motion by plaintiff-defendant Towber to vacate a jury verdict in three consolidated actions in which there was demonstrated misconduct consisting of fraternization between juror La Femina and Miss Sandra Campbell, one of the plaintiffs, during the course of trial.
Miss Campbell testified at the hearing conducted after rendition of the verdict that her contact with the juror was confined to an accidental meeting and a mere “ hello ” as they crossed each other’s path near the courthouse. Juror La Femina gave a different version. He testified that he accompanied Miss Campbell to her home and sought to console her after they had *892 accidentally met, advising her “ not to be upset ” when she expressed discomfort and fear. He further told her that he was sure everything would turn out “ OK ”.
The juror’s conduct was plainly in violation of the explicit instructions repeatedly given to all jurors to speak to no one about the trial or its progress and constituted a violation of his oath of office as a juror “ well and truly to try the issues between the parties in accordance with the instructions of the court.” Of course, he insisted that his motives were noble and his conduct honorable but these assertions are subject to considerable question. The meeting may have been accidental and, while they did not hold hands, they did talk, so that their extraordinary eight-minute walk from the courthouse to her home in its vicinity was hardly an innocuous episode. The juror was obviously sympathetic and this was directly connected with their mutual involvement and interest in the outcome of the trial. What hopes or expectations lie in the juror’s breast may never be known but hope, at least, of the lady’s gratitude may reasonably be inferred. Nor can it be said that Miss Campbell is the innocent victim of the juror’s attentions, for in the light of the affidavit submitted by her on this motion, she perjured herself when testifying that this was but a mere “ hello.” She surely sought the consolation and good will of the juror. Thus, while she may not have tampered with a juror in the conventional sense, as would a male litigant who offers a money bribe, she plainly did tamper with his emotions and possibly with his affections.
My original reaction to this motion to vacate was incumbered with irrelevant considerations — a complete waste of six days of trial involving, as it did, six attorneys, seven litigants, a voluminous record, lengthy jury deliberations interrupted with questions to the court and a request by it for their continued effort to arrive at a verdict. The possibility that a now trial might be adverse to Mildred McAdams, another successful and seriously injured passenger, innocent of all of this, also played its part. Finally, the near certainty of a repeated successful outcome upon a new trial for Miss Campbell, one of the party culprits in the piece, who sued both drivers, persuaded me that a new trial would not effectively punish her.
But these considerations aside, bias and sympathy on the part of juror La Femina were here disclosed. He was one of seven jurors who won over the rest to the final verdict, favoring both passengers against both drivers. Perhaps, as indicated by the remaining jurors at the hearing, they were not especially influenced by him. But it is conceivable that had he been opposed *893 to the verdict, there would have been an evenly divided jury which ultimately might have been persuaded to take an opposite view. In any event, even if one juror is biased, the entire panel is biased and a verdict rendered by such a jury ordinarily cannot stand (Knickerbocker v. Erie R. R. Co., 247 App. Div. 495), even though some of the innocent parties must suffer the consequences of a possible adverse result on a new trial.
Moreover, though a verdict may not be impeached upon the testimony of a juror alone (Payne v. Burke, 236 App. Div. 527; People v. Sprague, 217 N. Y. 373), there is sufficient evidence supplied by the parties themselves to justify the impeachment which would normally follow regardless of whether the misconduct actually influenced the verdict. Indeed, if it was ‘ ‘ likely to do so ”, it is sufficient (Payne v. Burke, supra).
However, Towber cannot claim prejudice as I am satisfied that he discovered the juror’s misconduct prior to the verdict because of the following suspicious circumstances: (a) Towber avers (but does not specify the manner or means in which the information was conveyed to him) that he was informed by Miss Campbell of the fraternization “ immediately following the return of the jury from its deliberations — at approximately 11 p.m.”, though she was then and for an appreciable time thereafter in the company of her attorney, as sworn to by the latter and (b) Towber failed to appear at the hearing the next morning after he was specifically informed by his attorney that the court demanded his presence to give his version of the affair. It is therefore a fair presumption that he had discovered the incident prior to the verdict either through conversations with Miss Campbell or by personal observation but chose to withhold that knowledge until he was certain of the outcome.
Thus, the undisclosed prior knowledge of the fraternization by Towber, the sole party who can claim prejudice and who stands to gain from the vacating of the verdict, constitutes a waiver of his claim of prejudice and of his right to assert the public policy to maintain inviolate the integrity of jurors. A waiver of the right to a new trial under these circumstances is clearly indicated by decisional law (Gale v. New York Cent, & Hudson Riv. R. R. Co., 13 Hun 1, affd. 76 N. Y. 594; Werner v. Interurban St. Ry. Co., 99 App. Div. 592; Mayer v. Liebmann, 16 App. Div. 54; Winder v. Pollack, 154 N. Y. S. 105 [Supreme Ct., App. Term, 1st Dept.]; Bruswitz v. Netherlands American Steam Nav. Co., 64 Hun 262; Woolson v. Waite, 158 Misc. 764).
Certainly Towber is not in a position to demand two chances to secure a verdict favorable to himself (Winder v. Pollack, supra.)
*894 The juryman’s failure to obey the court’s instructions may not have been premeditated or deliberate so that no clear case of contempt of court on his part is presented. However, Miss Campbell has plainly perjured herself at the hearing. The record of same and the papers upon this renewed motion will be furnished to the District Attorney of this county for whatever action he deems appropriate.
The renewed motion to vacate the verdict is denied.