# Richmond.

## Newport News Publishing Company v. Beaumeister.

### January 18, 1906.

1. PLEADING—*Declaration—Sufficiency.*—If a declaration, when read as a whole, charges the defendant with a breach of duty to the plaintiff, and states the facts constituting the alleged cause of action with sufficient certainty to be understood by the defendant, the jury and the court, it is good. It is not necessary for a plaintiff to negative his own contributory negligence or defenses which may be set up by the defendant.

2. PERSONAL INJURY—*Measure of Damages—"No Legal Limit"—Compensation.*—In an action to recover damages for a personal injury where the evidence does not warrant punitive damages, fair compensation for the injury suffered is the legal limit to the damages which a jury may award, and an instruction which tells the jury that there is "no legal limit" to the damages they may award for "personal injuries" and that they are judges of the extent of the damages which, from the evidence, the plaintiff is entitled to recover, not exceeding the amount claimed in the declaration, is misleading, and it is error to give it.

3. MASTER AND SERVANT—*Safe Place—Supervision by Servant—Instructions—Partial View of Case—Case at Bar.*—The rule that it is the duty of the master to exercise ordinary care to provide the servant with a reasonably safe place in which to work, and to keep it so, does not apply where the injured servant is himself to perform the duty of keeping the place in such condition. In the case at bar the instruction given states the general rule, but makes no reference to the duty devolved upon the servant as disclosed by the evidence in the cause, nor to the evidence tending to show his contributory negligence, and hence was misleading and erroneous.

4. INSTRUCTIONS—*Sufficiently Instructed.*—It is not error to refuse an instruction, though correct, where the ruling asked has already been fully and clearly covered by another instruction given.

5. MASTER AND SERVANT—*Obvious or Known Dangers—Unnecessary Exposure.*—An employee unnecessarily undertaking work in such a position that its performance is obviously dangerous, or known by him to be dangerous, when it could have been otherwise performed without danger, in a way well known to the employee, cannot recover of his employer for injuries occasioned thereby.

6. MASTER AND SERVANT—*Probable and Possible Dangers—Case at Bar.*— A master is not an insurer of the safety of his servant. While it is his duty to anticipate and guard against consequences that may be reasonably expected to occur, he is not required to foresee and provide against that which reasonable and prudent men would not expect to happen. In the case at bar, while it was negligence on the part of the defendant to fail to restore an electric light in the pit under its printing press for the use of the plaintiff, its servant, yet the proximate cause of the plaintiff's injury was his own palpable negligence, and there can be no recovery.

Error to a judgment of the Circuit Court of the City of Newport News, in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The facts sufficiently appear in the opinion of· the court. Instruction T, referred to in the opinion is as follows:

"The court instructs the jury that it is the master's duty to exercise reasonable care, that is, such care as reasonable and prudent men use under like circumstances in providing safe and suitable appliances and instrumentalities for the work to be done, and in seeing that the place assigned to its servant to work is kept in a safe and suitable condition, and in providing generally for the safety of its servant in the course of the employment, regard being had to the work and the difficulties and dangers attending it. It is furthermore its duty to exercise like care not to expose its servant to risks beyond those incident to the employment, and such as were in contemplation at the time of the contract of service."

*R. M. Lett* and *O. D. Batchelor,* for the plaintiff in error.

*Wm. C. Stuart* and *Ashby & Read,* for the defendant in error.

Cardwell, J., delivered the opinion of the court.

This is the sequel to the case of *Newport News Publishing Co.* v. *Beaumeister,* reported in 102 Va. 763, 47 S. E. 821. At the first trial there was a verdict and judgment for $2,000 in favor of the plaintiff, which judgment, on a writ of error to this court, was reversed, and the case remanded for a new trial. At the second trial the plaintiff again prevailed, and recovered the judgment for $4,500 now under review.

The declaration on which the first trial was had alleged that, in operating the printing press of the defendant company, it became necessary for the plaintiff to occasionally enter the pit under the press, in order to adjust certain parts of the machine; that it was the duty of the defendant company, in the exercise of reasonable care, to properly light the pit, so that the plaintiff might, with due caution on his part, perform his duties therein; that the defendant company failed to provide sufficient light in the pit for his safety, though it had promised to do so, and that, in reliance on such promise, plaintiff had continued in the defendant company's employment; that on the day of the accident it became necessary for him to go down in to the said pit to set some tapes on the said machine, and that after adjusting the same, and, while still in the pit, though the plaintiff was exercising due and proper care, his hair caught in the said machine, etc.

Recognizing that the evidence on the former trial showed that the plaintiff had accomplished with safety the purpose for which he went into the pit, when the case went back for a new trial his declaration was amended by inserting after "adjusting the same" (the tapes), the words "plaintiff recognized that there was a defect somewhere in the rollers, and in trying to locate the trouble, which was a necessary duty of the plaintiff."

So that by the first declaration the duty which plaintiff claimed he was performing when injured was setting "some tapes," while by the amended declaration it was in trying to locate a trouble in the rollers.

To the amended declaration the defendant company demurred, which demurrer was overruled, and this ruling of the trial court is assigned as error.

The ground of the demurrer relied on is that the declaration, as amended, contains no allegation of necessity or duty on the part of the plaintiff to be under the press, while it was in operation, in his endeavor to locate a defect in the rollers.

We are of opinion that there is no merit in this contention. Enough has been said of the declaration to show that it does allege the duty on the part of the plaintiff to be under the press in his endeavor to locate the defect in the rollers, and when this allegation was read by the defendant company along with the other facts alleged, it could not fail to understand that the allegation meant that it was necessary for the plaintiff to be under the press, while it was in motion, in his endeavor to locate the defect in the rollers. It is not incumbent upon a plaintiff to aver that he has not been guilty of contributory negligence, nor is it necessary to negative defenses that may possibly be interposed. All that is required is that the declaration state the facts constituting the alleged cause of action with sufficient certainty to be understood by the defendant, who has to answer them; by the jury, who are to inquire into their truth; and by the court, which is to render judgment. In other words, if the declaration is sufficient to inform the defendant of the nature of the demand made against him, and states such facts as will enable the court to say that if the facts are proved as alleged they establish a good cause of action, it is sufficient. *Va., &c., Wheel Co.* v. *Harris,* 103 Va. 708, 49 S. E. 991, and authorities cited.

We think the amended declaration measures up to the requirement of the rule adverted to, and that the demurrer thereto was properly overruled.

The next error assigned is the action of the court in giving the following instruction for the plaintiff:

"The jury are instructed that there is no legal limit to the damages they may award for personal injuries, and that they are the judges of the extent of the damages which, from the evidence, the plaintiff may be entitled to recover, and, in estimating such damages, they may take into consideration his age, his station in life, his injury, his physical and mental suffering arising from said injury, his loss of wages for the time he has been prevented by said injuries from working, and a proper compensation for his being deprived by said injuries from following such calling or business as he could have followed but for said injuries, but the damages may not exceed $10,000.00, the amount claimed in the declaration."

This is practically the same instruction on the measure of damages that came under review in *Norfolk, &c., Ry. Co.* v. *Marpole,* 97 Va. 599, 34 S. E. 462, where the objections made to the instruction were, (1) that it allowed the jury, without special proof, in fixing the plaintiff's damages, to take into consideration his mental suffering; and (2) that it intimated to the jury that they might award the sum of $10,000, in the way of damages, without qualifying the statement by saying that this sum was only mentioned because it was the maximum amount claimed by the plaintiff.

This court was of opinion then, as it is now, that, in so far as it relates to the amount of damages that the jury might allow, the instruction is erroneous and calculated to mislead the jury; but as we could not see that it had probably done so in that case, and as the judgment of the Circuit Court had to be reversed on other grounds, we only took occasion in the opinion to comment on the instruction as follows: "We do not think that the instruction, as a whole misled or could have misled the jury in estimating plaintiff's damages, although it would have been better had the instruction simply told the jury that the plaintiff claimed ten thousand dollars and they were authorized to award such sum as the evidence justified, not exceeding that amount."

The vital difference between that case and the case under consideration is that in the first-named there was nothing to indicate that the jury might have been misled by the instruction, while here the significant fact appears that at the first trial of the case, when the instruction in question was not given, the jury awarded the plaintiff $2,000 damages, and at the second trial, with this instruction before the jury, he was awarded $4,500.

It is not complained that the instruction specified in detail the possible injuries suffered by the plaintiff, to be considered in estimating his damages, but that it was misleading to tell them, in that connection, that there is no legal limit to the damages they might award. In other words that the instruction is misleading and calculated to misinform the jury that the law does not intend that a fair compensation for the injuries alone shall be given under the evidence, but that any amount named by the jury within the limit of damages claimed is the proper measure under the law. Counsel for the plaintiff cite a number of cases in support of their contention that this court has repeatedly sanctioned the expression in an instruction, "that there is no legal limit to the damages that the jury may award for personal injuries," but upon reference to those cases it will be seen that the question under consideration was whether or not the damages awarded were excessive, and not the question here under consideration. The expression is used in those cases, "there is no legal measure of damages," but in its use is to be found no sanction for an instruction in an action for personal injuries that admits of the interpretation, that there is no legal limit fixed by law to guide the jury in awarding damages other than the amount claimed in the declaration.

As was well said by Riely, J., in *Richmond Ry., &c., Co.* v. *Garthright,* 92 Va. 635, 24 S. E. 269, 32 L. R. A. 220, 53 Am. St. Rep. 839: "No method has yet been devised, nor scales adjusted, by which to measure or weigh and value in money the degrees of pain and anguish of a suffering human being,

nor ever likely to be;" but it was not meant there, or by what has been said by this court in any other case, so far as we have been able to find, that juries are not to be, in cases like this, guided in arriving at the amount of damages, by a due and proper consideration of what would be a fair compensation for the injury suffered, and that fair compensation is not the legal limit to the damages which they may award.

As was said in the opinion by Joynes, J., in *Peshine* v. *Shepperson,* 17 Gratt. 484, 94 Am. Dec. 468: "When the trespass is committed without fraud, oppression or other special aggravation, the object of the law, it is generally said, is to give compensation for injury suffered, and damages are restricted to that object."

In this case there could be no recovery of exemplary or punitive damages, as a protection to the public, but only a suitable recompense for the injury sustained, and we are of opinion that the instruction under consideration was, in the form in which it was given, clearly misleading and should not have been given.

Instruction "T," given for the plaintiff, is also erroneous in view of the evidence in this case. The established rule is, that it is the master's duty to exercise ordinary care in seeing that the place assigned to his servant to work is kept in a reasonably safe and suitable condition, for in most cases the master cannot delegate that duty so as to relieve himself from liability. *N. & W. Ry. Co.* v. *Phillips,* 100 Va. 362, 41 S. E. 726. But that rule does not control where the person injured is himself to perform the duty of keeping the place where he is at work in a safe condition. *Russell Creek Coal Co.* v. *Wells,* 96 Va. 416, 31 S. E. 614.

In this case it clearly appeared in the plaintiff's evidence, and in fact is admitted, that it was the duty of the plaintiff to keep the pit clear of the accumulation of paper that rendered his movements under the press more dangerous; while the instruction is not applied to the light alone, which it is alleged the defendant company had failed to furnish. It makes

no reference whatever to this admitted fact, that the duty rested upon the plaintiff to prevent the accumulation of paper in the pit making his movements under the press more dangerous; and, therefore, the jury might have believed that the neglect of this duty on the part of the plaintiff contributed to his injury, and yet understood from the instruction that they should find in his favor because of the neglect of the defendant company to furnish a sufficient light at the pit.

But it is contended that the evidence does not show that the accumulated paper increased the plaintiff's danger in the pit, or that there was enough in there to warrant its removal; and, therefore, the instruction could not have prejudiced the defendant company. This, however, is not borne out by the record. There was evidence that with no accumulation of the paper in the pit, the plaintiff could have stood erect therein, and under the press, with a clear space of at least half an inch between the top of his head and the tapes in which his hair was caught, while with the accumulated paper under his feet he had to go to find out the trouble in the ink rollers stooping so low that he could see neither the tapes that caught his hair nor the ink rollers, and while in that position he happened to raise his head too high, resulting in his hair at the back part of his head being caught, causing him to throw up his hand to extricate himself, when it was caught in the machine and mashed. Under these circumstances, the instruction, in telling the jury the duty rested upon the defendant company to see that the place assigned to the plaintiff to work was kept in a safe and suitable condition, without any reference to the evidence tending to prove that it was his duty to keep the pit, in which he received his injuries, free from accumulated paper, or to the evidence tending to prove that this neglect of duty on his part contributed to the injury, was erroneous and well calculated to mislead the jury, and was not cured by any other instruction given.

The next assignment of error is to the refusal of the court

to give Instruction No. 2, asked for by the defendant company. Its purpose was to tell the jury, that, if the point where the accident happened was so dark that plaintiff could not see the tape which caught his hair, or the cylinder which crushed his hand, even if he had been looking for them, he could not recover.

Instruction No. 7 contains the same proposition of law more clearly and fully expressed; therefore, the defendant company was not prejudiced by the refusal to give its instruction No. 2.

As has been stated, the former declaration alleged that plaintiff went down into the pit to adjust some tapes, and after adjusting the same, and while still in the pit, his hair was caught, etc., but did not say where he then was, or what he was doing. The amended declaration, upon which the last trial was had, alleges that after adjusting the tapes "plaintiff recognized that there was a defect somewhere in the rollers, and in trying to locate this trouble, which was a necessary duty of the plaintiff, his hair caught, etc." The issue under the declaration, as amended, was, therefore, not whether it was necessary for plaintiff to go into the pit while the machine was in operation, but whether, being already in the pit and having accomplished in safety the purpose for which he went in, it was necessary that he remain in there and keep the machine in operation while making the investigation of the rollers situated in the other end of the pit from where he adjusted the tapes, which he says he was making at the time of the accident.

To meet these new conditions, and in accordance with the views of this court when the case was here on the former writ of error, the evidence being directed mainly to this phase of the case, the defendant company asked for the following instruction, numbered 3: "An employee unnecessarily undertaking work in such a position that its performance is obviously dangerous, or known by him to be dangerous, when it could have been otherwise performed without danger, in a way well known to the employee, cannot recover for injuries occasioned thereby;

and if the jury believe from the evidence that the investigation of the trouble with the ink rollers, which the plaintiff says he was making at the time of the injury, could have been made after first stopping the machine, or could have been made on the outside of the pit, then the jury must find for the defendant." This instruction was refused, the court giving in lieu thereof, with certain changes, instruction No. 6, refused at the last trial and ruled by this court to be correct, as the case stood at the former trial.

Instruction No. 3 contains a concise statement of the law of the case entirely applicable to the issue under the amended declaration and to the evidence bearing on that issue, while No. 6 given in its place required the jury to find, as a condition precedent to a verdict for the defendant company, that it was not necessary that the plaintiff should go into the pit while the machine was running, which was not in issue, the issue made under the amended declaration relating solely to the conduct of the plaintiff after going into the pit, wholly uninfluenced by anything that transpired prior thereto; for when plaintiff went in, and until he had finished adjusting the tapes which caused him to go in, he was ignorant of the trouble which he was endeavoring to remedy at the time of his injury. As was said by counsel for the defendant company, the necessary effect of directing the consideration of the jury to the necessity of going into the pit and the danger attendant thereon, was to divert their minds from the real issue—the prudence of plaintiff's conduct with relation to what transpired in the pit after adjusting the folding tapes—and to fix their attention on the prudence of the conduct of plaintiff in relation to the adjustment of the tapes, which was the real issue at the former trial before the declaration was amended, but which, under the amended declaration, had become a mere matter of inducement.

It was sought by instruction No. 3 to submit plainly and fairly to the jury the question, whether or not it was necessary

to locate the defect in the ink rollers without first stopping the machine, unhampered and unincumbered by any issue concerning the tapes, such issue not being pertinent at this trial; and we are of opinion that it was error to refuse it and to give in its place instruction No. 6.

Instruction No. 3 having been refused, the defendant company's instruction No. 4, which stated, in different form, the proposition enunciated in No. 3, should have been given, but at another trial of the case it will not be necessary to give both.

We do not consider it necessary to pass upon the question presented in bill of exceptions No. 4, as it is not likely to arise at the next trial.

. The remaining assignment of error is the refusal of the court to set aside the verdict of the jury and grant a new trial, on the ground that the verdict is contrary to the law and the evidence.

The plaintiff, has established the duty of the defendant company to provide the electric light alleged to have been necessary for use in examining and adjusting the machinery of the printing press in the pit, and its failure to do so, whereby the plaintiff would be entitled to recover damages in this action for the injuries he sustained, unless it appears from the evidence, viewed under the familiar rule governing its consideration, that his own negligence was the proximate cause of the injury, or contributed thereto.

The plaintiff was a man of experience, and had entire control of the printing press when he received the injuries for which he sues; and no one knew better than he the conditions surrounding, and the dangers confronting him when he attempted in the dark to locate the trouble in the ink rollers. As said in the opinion of this court (*Newport News, &c., Co.* v. *Beaumeister, supra*), the absence of the light increased the danger, and imposed upon the plaintiff enlarged obligations to exercise due care and caution in the performance of his duty. Notwithstanding the darkness and the promise of the master to

repair the light, there was the absolutely safe way of repairing the defect in the machine, and the question arises, whether the plaintiff did not owe to his master, as well as to himself, the duty of adopting the method of doing the work, with respect to which there was no danger.

To meet the contention of the defendant company that the defect or trouble in the ink rollers, which the plaintiff says he was trying to detect when he was injured, could have been detected after the machine had been stopped, or from the outside of the pit, we have only his statement that it could not be done; but he states no facts to show this, and therefore what he says on that point is but an expression of an opinion. But were it conceded that he was right in the statement he makes, the question remains, was it necessary or his duty to expose himself to the known danger of going under the press in the dark to find the cause of the defect in the work he was doing, and which appears from his evidence to have been trivial?

It would serve no good purpose to review the evidence in detail. Leaving wholly out of view that part of it tending to prove that his neglect of duty in allowing the paper to accumulate in the bottom of the pit, in consequence of which he could not walk under the machine without stooping, and could not tell how near to the machine his head was when in that position, contributed to his injury, there is no getting away from the admissions he makes in giving his own evidence, that it was not safe in the pit under the machine at the west end, where he was, without a light; that he could not see the ink rollers he went to inspect and had to walk under and would not say that he could have seen his hand two inches before his face; that the trouble when located could not be remedied with the machine in motion; that he had to go in a stooping position when looking for it; and that in raising his head in passing under the ink rollers he was liable to come in contact with them. When asked, "Well, how could you calculate in the dark just how far you could raise your head without striking

them" (the rollers)? He answered: "I didn't know. I just stooped way low." His witness, Vaiden, also states that it was dangerous under the machine where the plaintiff was hurt without a light. The following questions and answers appear in plaintiff's own evidence: "Could you see the ink rollers at all?" Ans. "No, sir." "Was there light enough there, if you had looked, for you to have seen the tape which caught your hair?" Ans. "When?" "At the time your hair was caught or just prior thereto, if you had looked for the tape would you have seen it?" Ans. "No, sir." If the contention of his counsel, that he was speaking of not being able to see the tapes and ink rollers because of his stooping position, could be accepted, it would all the more show his recklessness in putting himself in that position.

There are times when an employee may incur extraordinary risks and not relieve his employer from liability for an injury he thereby sustains, as when it is necessary in order to save the lives of others, or to prevent injury to them, or to the employer's property, and perhaps other instances might be given; but that was not the situation when the plaintiff exposed himself on the occasion of his injury. No consequences of importance, certainly none serious, would have resulted if he had refused, as he should have done, to go to the dangerous place under the printing press, or had he pursued the absolutely safe course of stopping the machinery before attempting to detect and adjust the trouble in the ink rollers. It is true that he claims that he could not have detected the trouble in the ink rollers which caused the defect in the paper being printed, with the machine stopped, or from the outside of the pit; but it is also true, as shown by his own admissions, that he could not have discovered the trouble in the ink rollers in the darkness there, and therefore he needlessly and recklessly went into a place of danger to accomplish what, as he well knew, he could not accomplish without sufficient light. He undertook to enter a place where he had to go in a stooping position with his eyes

down. If there had been a blaze of light, he could not have seen the ink rollers in that position. In undertaking to raise his eyes to look, he made the mistake of raising his head too high, resulting in the injury to him, for which, under the circumstances, his employer is not responsible.

It was said by Judge Cooley, in *Sjogren* v. *Hall,* 53 Mich. 274, 278, 18 N. W. 812, 814, quoted by Buchanan, J., with approval, in *Persinger* v. *Alleghany Ore, &c., Co.,* 102 Va. 354, 46 S. E. 326: "So far as there is a duty resting upon the proprietor in such cases, it is a duty to guard against probable damage; and it does not go to the extent of requiring him to render accidental injury impossible. . . . If the fact that prevention was possible is to render the employer liable, then he may as well be made an insurer of the safety of those in his service in express terms, for to all intents and purposes he would in law be insurer, whether nominally so or not."

The opinion in *Persinger* v. *Alleghany Ore, &., Co. supra,* says: "It is right that the master should be required to anticipate and guard against consequences that may reasonably be expected to occur, but it would violate every principle of justice or law if he should be compelled to foresee and provide against that which reasonable and prudent men would not expect to happen." *Railroad* v. *McCormick, ante* p. 400, 51 S. E. 731.

In *Ches. & O. Ry. Co.* v. *Hafner's admr.,* 90 Va. 621, 19 S. E. 166, it was held, that the railroad company was not liable for the death of Hafner, who was struck by the fourth sill of a dangerously low bridge after he had passed in safety under the three first sills by stooping and lowering his head, when he had full knowledge of the dangerous character of the bridge, and the accident was due to his negligently raising his head too soon, his own negligence being the proximate cause of the injury. Discussing the evidence as to Hafner's conduct at the time of the accident, the opinion by Lacy, J., says: "He did

not stoop low enough all the way under the bridge, but negligently raised his head too soon, and was struck; while others situated precisely as he was, did stoop low enough, and were unharmed. This was clearly contributory negligence on his part, which was the proximate cause of his injury and he cannot recover." . . . There the negligence charged was the keeping and maintaining a dangerously low bridge, under which the employees of the company had to pass in the discharge of their duties; but it was considered that while the company was, in this respect, negligent, the accident to Hafner, was due to his want of proper care for his own safety in passing under the bridge.

While it was negligence on the part of the defendant company not to restore the electric light for use under its printing-press, clearly the injury to plaintiff was not due to that negligence, but to his negligence in not exercising due care for his own safety when in a place of known danger, to the mistake of raising his head too high when he knew he was liable to come in contact with the machinery above him; an accident which the defendant company could not have foreseen as liable to happen, and provided against by the exercise of any sort of care on its part.

We are of opinion that the plaintiff's own palpable negligence was the proximate cause of his injury, and that the Circuit Court erred in not setting aside the verdict of the jury as contrary to the law and the evidence; therefore, its judgment must be reversed and annulled, the verdict of the jury set aside, and the cause remanded for a new trial.

*Reversed.*