Syllabus.

# Richmond.

## Chesapeake and Ohio Railway Co. v. Carnahan.

November 11, 1915.

Absent, Keith, P.

1. Constitutional Law—*Amendment VII U. S. Constitution—Limitation on Federal Courts Only—Jury of Twelve—Federal Employers' Liability Act—Suit in State Court.*—The seventh amendment of the Constitution of the United States relates only to trials in the courts of the United States, and its scope is not enlarged by anything contained in the fourteenth amendment of said Constitution. The States regulate trials in their own courts in their own way whether the right being enforced arises under a law of one of the States, the United States, or a foreign country, and hence, in enforcing a liability arising under the Federal Employers' Liability Act, of which State courts are expressly given jurisdiction, the defendant has no right to demand a jury of twelve, or one composed in any other manner than that prescribed by the laws of this State.

2. Damages—*Personal Injury—"Effects Upon His Future"—Speculative Damages—Instructions.*—In instructing the jury on the measure of damages for a personal injury, they could not have been misled by telling them they may take into consideration *"its effect upon his future"* where it appears that they were verbally cautioned by the court that they could not take into consideration any probable promotion which might come to the plaintiff or any probable increase in his earning capacity, and when there was no evidence in the record of matters remote or speculative nor of prospects of promotion or increased earnings. It will not be presumed that the jury disregarded the instructions of the court and rested their verdict upon matters remote and speculative, and not upon a consideration of the evidence in the case.

3. Instructions—*Personal Injury—Mention of Damages Laid in Declaration.*—In a personal injury case, it is not error to conclude a correct instruction on the measure of damages, which properly states the elements of damage to be considered, with the statement that their finding shall not be "in excess of $35,000 as to them may seem

just and fair"—the amount stated being the damages laid in the declaration. The mere mentioning of the sum claimed as damages in the declaration could not have misled the jury, since the court had defined the elements entering into the ascertainment of .damages and expressly told them that such damages as they allowed should "seem to them just and fair."

4. INSTRUCTIONS—*Evidence to Support.*—It is not error to refuse an instruction when there is no evidence in the case to support it.

5. APPEAL AND ERROR—*Verdicts—Excessive Damages.*—A verdict will not be set aside as excessive when there is nothing in the record to indicate that the jury, in ascertaining the damages, acted under the impulse of an improper motive, gross error, or misconception of the subject.

Error to a judgment of the Circuit Court of Hanover county, in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.* ·

The opinion states the case.

*D. H. & Walter Leake* and *Henry Taylor, Jr.,* for the plaintiff in error.

*Allen & Walsh,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

This action was brought by the defendant in error, Asa P. Carnahan, against the plaintiff in error, the Chesapeake and Ohio Railway Company, to recover damages for personal injuries imputed to the negligence of the defendant. At the trial there was a verdict and judgment for the plaintiff for $25,000 damages, and to that judgment this writ of error was awarded.

The plaintiff was, and had been for some years prior to his injury, an employee· of the defendant as fireman on both freight and passenger trains, and on the date of his injury, March 7, 1913, was in the line of his duty on one of defend-

ant's trains which left Richmond, Va., at 12:40 a. m., west bound, the train, besides the engine and tender, consisting of seven empty tourist sleepers, being moved "deadhead" (*i. e.,* without passengers or freight) from Richmond, Va., and destined to points without this State. Upon the arrival of the train at Doswell about two o'clock a. m., and as it approached that station, before crossing the tracks of the Richmond, Fredericksburg and Potomac Railroad Company at that point, it stopped on signal given by telegraph operator, J. W. Beasley, in the tower of Doswell, the signal being given on account of there being then a series or "cut" of fifteen or sixteen empty cars, coupled together, standing on the main track a short distance west of Doswell, just west of a county road crossing, which were being collected into a special train in charge of Conductor J. R. Shisler to be brought east to Richmond. This "cut" of empty cars had just been placed by Conductor Shisler on the main track, with the caboose on the west end of them, and no lights of any sort on the east end— that, is, facing the direction from which the train that plaintiff was firing approached; nor was there a flagman placed there to protect said "cut" of cars, or to give warning of an approaching train, the engine that had placed them on the main track being then on a side track nearer to the station— Doswell.

After delaying plaintiff's train, west bound, some six or seven minutes at the point where it had been stopped on signal, a signal was given it by Operator Beasley, from the tower or telegraph office, to proceed, meaning that the main track was clear, and the train proceeding ran into the east end of said "cut" of cars that had been left standing on the main track, as stated.

In the collision, the plaintiff was caught, from his knee of his right leg down, between the tank on the tender and the boiler head in the cab of his engine, and remained pinned in that position for forty-five or fifty minutes before he was extri-

cated by the efforts of his fellow workmen. His leg was so badly mashed and burned that it eventually had to be amputated at a point between the knee and the thigh, and it is for those injuries and his consequent sufferings that he sues to recover damages.

The declaration contains four counts. The first two counts charge that plaintiff and defendant were engaged in interstate commerce, thus alleging a cause of action under the employers' liability act of Congress. One of these was based upon the alleged negligence of Operator Beasley, and the other upon the alleged negligence of the train crew of the train standing at Doswell under Conductor Shisler's charge. The other two counts were based upon the same grounds of negligence, save that they omitted any allegation as to the parties being engaged in interstate commerce, thus alleging a cause of action under the law of this State. There was a demurrer to the declaration upon the ground that it was improper to combine in one suit a cause of action under the employers' liability act of Congress and the State law, which demurrer was overruled, and this ruling is made the basis of defendant's first assignment of error, but in the oral argument of the case before this court the assignment was waived.

The case was tried by a jury of seven, in accordance with the provisions of section 3166 of the Code of 1904. It was regularly summoned under the State laws and consisted of nine veniremen, which, after the plaintiff and defendant had each stricken off one venireman, left the jury of seven, which tried the case. Before the jury, however, had been examined on their *voir dire,* and before any members of the panel had been stricken off by either party, the defendant challenged the array of jurors and moved the court to quash the *venire farias,* upon the ground that the jury was not summoned, selected, formed and constituted as required by article 7 of the amendments to the Constitution of the United States, which is as follows: "In suits at common law, where the value in contro-

versy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any court of the United States, than according to the rules of the common law."

The motion to quash the venire was overruled and this ruling is made the basis of the defendant's second assignment of error here; the contention being that the rights asserted in this suit are Federal rights, created by the Congress of the United States, and can only be tried by the common law jury of twelve, required by the seventh amendment to the Constitution, *supra,* since the jury referred to in this amendment is the common law jury of twelve.

This contention is without merit. Section 6 of the employers' liability act, as amended by the act of April 10, 1910, expressly provides that the Federal courts shall have concurrent jurisdiction with the State courts of cases arising under the act, and that no case brought in a State court shall be removed to a Federal court. How else is a State court to exercise its jurisdiction in such a case except according to the procedure provided for in its own statues? The statutes of this State make no provision for a trial in civil cases by a jury of twelve, except for some special reason when a special jury may be summoned under section 3158 of the Code, and the allowance or refusal of a special jury is a matter resting in the sound discretion of the court. *A. & D. R. Co.* v. *Peake,* 87 Va. 130, 12 S. E. 348.

Upon reason and authority it is not essential to the enforcement of a right created by a Federal law that provisions of the Federal Constitution regarding the administration of the Federal law be followed. The enforcement of a Federal right as it seems to us from the authorities, does not differ from the enforcement of rights created by other sovereignties than the United States, in that it draws with it the necessity of enforcement in the manner prescribed by the Federal Constitution for the administration of justice.

It is well said by the learned counsel for the plaintiff in this case: "Rights created by the Congress of the United States become a subject of litigation between parties and are enforced as a basis of liability in the same manner as are other rights subsisting between litigants.   The United States is a sovereign possessing all the attributes of sovereignty though exercising its sovereignty over a limited subject matter. One of the attributes of sovereignty is the authority to create rights and obligations between persons amenable to its jurisdiction.   Those rights once created in no way differ from rights created by any other sovereignty.   It is true that owing to the peculiar relation between the National and State governments the national and federal government may exclude the State courts from the exercise of jurisdiction over Federal rights, but in the absence of such restriction, Federal rights are enforcible in any court having jurisdiction of the parties."

The relation of the State courts to rights created by the Congress of the United States is very clearly explained in the Federalist, No. 82, page 608, as follows: "I mean not, therefore, to contend that the United States in the course of legislation upon the objects intrusted to their direction, may not commit the decision of causes arising upon a particular regulation to the Federal courts, solely, if such a measure should be deemed expedient; but I hold that the State courts will be divested of no part of their primitive jurisdiction, further than may relate to an appeal; and I am of opinion that in every case in which they were not expressly excluded by the future actions of the national legislature, they will, of course, take cognizance of the cause to which those acts may give birth.   This I infer from the nature of judiciary power, and from the general genius of the system.   The judiciary power of every government looks beyond its own local or municipal laws, and in civil cases lays hold of all subjects of litigation between parties within its jurisdiction, although the causes of dispute are relative to the laws of the most distant part of

the globe. Those of Japan not less than those of New York may furnish the objects of legal discussion to our courts. When in addition to this we consider the State government and the national government as they truly are, in the light of kindred systems, and as parts of one whole, the inference seems to be conclusive that the State courts would have concurrent jurisdiction in all cases arising under the laws of the Union, where it is not expressly prohibited."

In the second employers' liability case—*Mondou* v. *N. Y. N. H. & H. Ry. Co.*—223 U. S. 1, 32 Supt. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44, the court in reviewing the action of the State court of Connecticut in refusing to enforce the act because not in harmony with the policy of that State, said: "Because of some general observations in the opinion of the Supreme Court of Errors, and to the end that the remaining ground of decision advanced therein may be more accurately understood, we deem it well to observe that there is not here involved any attempt by Congress to enlarge or regulate the jurisdiction of State courts, or to control or affect their modes of procedure, but only a question of the duty of such a court, when its ordinary jurisdiction, as prescribed by local law, is appropriate to the occasion, and is invoked in conformity with those laws, to take cognizance of an action to enforce a right of civil recovery arising under the act of Congress, and susceptible of adjudication according to the prevailing rules of procedure. We say 'when its ordinary jurisdiction, as prescribed by local laws, is appropriate to the occasion,' because we are advised by the decisions of the Supreme Court of Errors that the superior courts of the State are courts of general jurisdiction, are empowered to take cognizance of actions to recover for personal injuries and for death, and are accustomed to exercise that jurisdiction, not only in cases where the right of action arose under the laws of that State, but also in cases where it arose in another State, under its laws, and in circumstances in which the laws of

Connecticut give no right of recovery, as where the causal negligence was that of a fellow servant. . . . We are not disposed to believe that the exercise of jurisdiction by the State courts will be attended by any appreciable inconvenience or confusion; but, be this as it may, it affords no reason for declining a jurisdiction conferred by law. The existence of the jurisdiction creates an implication of duty to exercise it, and that its exercise may be onerous does not militate against that implication."

The court in *Chaflin* v. *Houseman,* 93 U. S. (3 Otto.) 130, 137, 23 L. Ed. 833, 838, defines the relation of the State courts to Federal laws as follows: "It is true the sovereignties are distinct, and neither can interfere with the proper jurisdiction of the other, as was so clearly shown by Chief Justice Taney, in the case of *Ableman* v. *Booth,* 21 How. (62 U. S.) 506, 16 L. Ed. 169, and hence the State courts have no power to revise the action of the Federal courts, nor the Federal the State, except where the Federal Constitution or laws are involved. But this is no reason why the State courts should not be open for the prosecution of rights growing out of the laws of the United States, to which their jurisdiction is competent, and not denied."

In that case the opinion by Mr. Justice Bradley reviews and commends the views presented by Alexander Hamilton in No. 82 of the Federalist, *supra,* and this is said: "These views seem to have been shared by the first Congress in drawing up the judiciary act of September 24, 1789, 1 Stat. at L. 73, for, in distributing among the various courts created by that act, there is a constant exercise of the authority to include or exclude the State courts therefrom; and where no direction is given on the subject, it was assumed, in our early judicial history, that the State courts retained their usual jurisdiction concurrently with the Federal courts invested with jurisdiction in like cases."

As we read the Constitution of the United States, in the

light of judicial interpretations thereof, as originally adopted, there is nothing which by any possibility could be construed as an inhibition on the State courts, or as prescribing the procedure to be adopted in enforcing Federal rights. The seventh amendment was proposed to the legislatures of the several States by an act of Congress passed at the first Congress, September 25, 1789, which was the day following the passage of the judiciary act, creating Federal tribunals inferior to the Supreme Court, and this act of September 24, 1789, first created courts having jurisdiction for the enforcement of Federal laws. Until then they were enforcible only in the State courts. Thereupon, on the next day, the act subsequently embodied in the first ten amendments was passed, and we agree with the contention of counsel for the plaintiff in this case that this is a significant fact in determining the application of the seventh amendment to State courts, whether they are taking cognizance of Federal or State laws, for it necessarily requires the inference that it was made necessary by the creation of Federal trial courts, and applies to them only. This view is clearly borne out by the following decided cases: *Barron* v. *Baltimore,* 7 Pet. 248, 8 L. Ed. 672; *Edwards* v. *Elliott,* 21 Wall. 557, 22 L. Ed. 487; *Walker* v. *Sauvinet,* 92 U. S. (2 Otto) 90, 23 L. Ed. 678; *Brown* v. *New Jersey,* 175 U. S. 172, 20 Sup. Ct. 77, 44 L. Ed. 119; *Maxwell* v. *Dow,* 176 U. S. 581, 20 Sup. Ct. 448, 44 L. Ed. 597.

We deem it necessary to quote from only two of these cases.

In *Walker* v. *Sauvinet, supra,* the court speaking of an act of the State of Louisiana, permitting a judge to enter a judgment without a verdict in case a jury failed to agree, said: "This (seventh amendment), as has been many times decided, relates only to trials in the courts of the United States. *Edwards* v. *Elliott,* 21 Wall. (U. S.) 557, (22 L. Ed. 484). The States, so far as this amendment is concerned, are left to regulate trials in their own courts in their own way. A trial by jury in suits at common law pending in the State courts is

not, therefore, a privilege or immunity of national citizenship which the States are forbidden by the fourteenth amendment to abridge. A State cannot deprive a person of his property without due process of law, but this does not necessarily imply that all trials in the State courts affecting the property of persons must be by jury. This requirement of the Constitution is met, if the trial is had according to the settled course of judicial proceedings. *Murry* v. *Hoboken, etc., Co.,* 18 How. 280, 15 L. Ed. 276. Due process of law is process due according to the law of the land. This process in the States is regulated by the law of the State. Our power over that law is only to determine whether it is in conflict with the supreme law of the land, that is to say, with the Constitution and laws of the United States made in pursuance thereof, or with any treaty made under the authority of the United States, article VI, Constitution. Here the State court has decided that the proceedings below were in accordance with the law of the State, and we do not find that to be contrary to the Constitution or any law or treaty of the United States."

In *Brown* v. *New Jersey, supra,* there was called in question the constitutionality of the law of New Jersey providing for a "struck" jury in felony cases, and the opinion by Mr. Justice Brewer, citing many authorities, said: "The first ten amendments to the Federal Constitution contain no restrictions on the powers of the State, but were intended to operate solely on the Federal Government. . . . The State has full control over the procedure in its courts, both in civil and criminal cases, subject only to the qualifications that such procedure must not work a denial of fundamental rights or conflict with specific and applicable provisions of the Federal Constitution. The State is not tied down by any provision of the Federal Constitution to the practice and procedure which existed at the common law. Subject to the limitations hereinbefore named, it may avail itself of the wisdom gathered by the experience of the century to make such changes as may be necessary."

These authorities, we think, fully answer the further contention of the learned counsel for the defendant in this case, that the fourteenth amendment to the Constitution of the United States has operated to enlarge the scope of the seventh amendment, thereby rendering the seventh amendment a privilege under the fourteenth amendment.

It is inconceivable that the Supreme Court in the *Second Employers' Liability Cases, supra,* in holding that the right of the State courts of general jurisdiction to enforce a right under this law created an implication of duty to enforce it, intended that this ruling should be restricted to courts of States providing a jury of twelve. Federal rights are recognized and enforced in the State courts, as are any other rights which are the basis of a litigation, whether arising out of State or foreign law. The Constitution of the United States contains no prohibition to the enforcement of those rights in the State courts, in accordance with their established mode of procedure, and the seventh amendment is a limitation on the administration of law in the Federal courts, not a limitation on the conduct of litigation, on whatever rights based, in the State courts.

The next assignment of error calls in question the correctness of the following instruction given for the plaintiff over the objection of the defendant: "The court instructs the jury that if they believe from a preponderance of the evidence that the defendant is liable to the plaintiff in this action, then, in assessing damages against the defendant, they may take into consideration the pain and suffering of the plaintiff, his mental anguish, the bodily injury sustained by him, his pecuniary loss, his loss of power and capacity for work and its effect upon his future, not, however, in excess of $35,000.00, as to them may seem just and fair."

The objection to this instruction is first directed to the use of the words therein, *"its effect upon his future,"* the contention of the defendant being, in effect, that this language was entirely too broad and allowed the jury to take into considera-

tion things which might be in their nature essentially speculative and remote, and for which there could be no recovery in damages; that is, the jury might have considered the possibility of the plaintiff's promotion and speculative profits from collateral undertakings upon which he might have embarked but for the injury, both of which have been condemned as improper elements of damage in such cases; and, second, the contention is that the instruction directs the attention of the jury to the sum of $35,000.00 without qualifying it with the statement that the sum was mentioned merely because it was the maximum amount claimed in the declaration.

To sustain the first objection to the instruction, we would have to reach the conclusion that the jury could have not only taken into consideration matters which were not in evidence, but matters which they were expressly instructed not to consider. The record shows that the trial court was careful to exclude, upon defendant's objection, all evidence of possibility or probability of plaintiff's promotion, and of his possible or probable increased earnings, and it also appears in the record that the presiding judge "cautioned counsel when discussing the plaintiff's damage that there was no evidence in the record of the plaintiff's prospects of promotion, and orally instructed the jury that they should not take into consideration any probable promotion which might come to the plaintiff or any probable increase in the earning capacity of the plaintiff."

It is true that this instruction was not in writing, but as there was no evidence in the record of matters remote or speculative, no evidence of prospects of promotion or increased earnings, however broad the language of the instruction under consideration, this court cannot assume that the jury disregarded the instructions of the trial court and rested their verdict upon matters remote and speculative, and not upon a consideration of the evidence in the case.

In *R. & D. Ry. Co.* v. *Elliott,* 149 U. S. 267, 13 Sup. Ct. 837, 37 L. Ed. 728, cited for the defendant in this case, it was

said that the particular losses the plaintiff sustained, or his possible promotion, could not be considered, but what the future holds out for such a one, in general, was, of course, to be considered. See, also, *Wash., Georgetown Ry. Co.* v. *Harmon's Admr.,* 147 U. S. 571, 13 Sup. Ct. 557, 37 L. Ed. 284, where the court held that an instruction permitting an award of damages for future effects of the plaintiff's injury, such as suffering of mind and body, personal inconveniences, and the loss of time he would suffer in the future, was not objectionable.

This court in *Richmond & Danville R. Co.* v. *Norment,* 84 Va. 167, 4 S. E. 211, 10 Am. St. Rep. 827, approved an instruction which told the jury they should take into consideration "proper compensation for his (plaintiff's) being deprived by the said injuries from following such calling or business as he could have followed but for said injuries," the opinion of the court saying that the instruction was plainly proper and upheld by reason and authority.

Likewise the court, in *Ches. & O. Ry. Co.* v. *Hoffman,* 109 Va. 44, 63 S. E. 432, in an opinion by Keith, P., approved an instruction, "that the amount of damages should compensate the plaintiff for the loss of money which he would probably earn had not the injuries occurred;" provided, of course, that the injuries received were the result of the negligence of the defendant company.

The instructions here complained of required the jury to take into consideration the pain and suffering of the plaintiff, his mental anguish, the bodily injury sustained by him, his pecuniary loss, his loss of power and capacity for work and its effects upon his future. We do not think that the instruction is susceptible of the construction contended for, that it permitted the jury to take into consideration "possible future physical effects from the injury such as future suffering which in the absence of evidence as to the probability of such future suffering was improper." It would be a constrained construction of the language of the instruction, "Its effects upon his

future," to hold that it refers to future suffering, and that damages not the proximate result of plaintiff's injuries could have been included under the instruction. Not only so, the instruction enumerated accurately the elements of damages that the jury were to take into consideration, and at the instance of the defendant the court instructed them "that in order for the plaintiff to recover in this case he must prove by a preponderance of the evidence that the injuries he sustained were the direct and proximate result of the negligence of the defendant."

In *Norfolk Southern R. Co. v. Tomlinson,* 116 Va. 153, 81 S. E. 89, a case of a similar character to this, the court considered an instruction relating to the measure of damages which told the jury that in assessing damages they might take into consideration "such damages as will naturally, reasonably and probably result to him (the plaintiff) in the future as consequences of his injuries," without confining them to the evidence before them, and in the opinion by Buchanan, J., it was said: "It would have been better to have told the jury that future damages, like all other damages allowed, must be ascertained from the evidence before them, but when the instruction as a whole is considered, we do not think that the jury could have thought they had the right to fix the future damages by mere conjecture instead of by the evidence before them."

So, in the case here, the instruction under consideration, when considered as a whole, especially when considered along with all the other instructions given in the case, the jury could not have, as it seems to us, thought they had the right to fix the future damages of the plaintiff by mere conjecture instead of by the evidence before them. See, also *Richmond P. & P. Co.* v. *Robinson,* 100 Va. 394, 41 S. E. 719; *Norfolk Ry. Co.* v. *Spratley,* 103 Va. 379, 49 S. E. 502; *Daingerfield* v. *Thompson,* 33 Gratt. (74 Va.) 136, 36 Am. Rep. 783.

With respect to the other objection to the instruction, viz: that it mentions the sum of $35,000.00 whereby the jury were misled, we deem it only necessary to say that it is not to be

presumed from the amount of damages assessed to the plaintiff that the jury were misled by the mere mention of the sum claimed as damages in his declaration, since the court had defined the elements entering into the ascertainment of damages and expressly told the jury that such damages as they allowed should "seem to them just and fair." The instruction conforms to the suggestion made by this court with respect to an instruction complained of in *Newport News Pub. Co.* v. *Beaumeister,* 104 Va. 744, 52 S. E. 627, where the jury were told, "but damages may not exceed $10,000.00, the amount claimed in the declaration," omitting the limitation that the damages assessed by the jury should be such as they deemed just and fair.

There was no error in refusing defendant's instructions "C" and "D," telling the jury that they should not take into consideration "chances of increased earnings by reason of promotion" and "prospects of increased earnings if he had not been hurt." We find no evidence in the record that would have justified the giving of those instructions, and where such is the case it is too well settled to require citation of authority that if there is no evidence on the subject matter of an instruction it should not be given; nor was there given an instruction for the plaintiff broad enough to permit the jury to consider these elements of damage, as counsel for defendant contends. Not only so, but the court, during the argument of the case for the plaintiff, cautioned counsel that there was no evidence in the record of the plaintiff's prospects of promotion and orally instructed the jury that they should not take into consideration any probable promotion which might have come to the plaintiff or any probable increase in the earning capacity of the plaintiff. In these circumstances the defendant could not possibly have been prejudiced by the refusal of its instructions "C" and "D."

The remaining assignment of error is to the refusal of the court to set aside the verdict and award the defendant a new trial, because contrary to the law and the evidence, and because of excessive damages assessed to the plaintiff.

We have already seen that there was no error in the rulings of the trial court in instructing the jury as to the law of the case, and the evidence to which we have adverted very clearly shows, as we view it, that the jury's finding could not have been other than in favor of the plaintiff, and that the record is free from any vital error affecting his right to recover. There is nothing whatever in the record indicating that the jury, in ascertaining the damages, acted under the impulse of an improper motive, gross error, or misconception of the subject. The damages assessed to the plaintiff amount to a large sum, it is true, and if we could usurp the functions of the jury, perhaps we might say that the amount should have been less, but this we have no right to do, nor can we say, upon the evidence before us, that the verdict is plainly excessive. The injuries sustained by the plaintiff were very severe, and the circumstances connected with the accident and his attendant sufferings were in the highest degree distressing; or, as he, after describing his situation as being caught from his knee down—jammed against the boiler head for fifty minutes and his leg roasting—on being asked as to his suffering, said, "There is no way to get at that." Amputation of his leg above the knee, leaving a stump of about eight or ten inches, followed. To the time of the trial, one year after the injury, the wound had not entirely healed. He had attempted to use an artificial limb, but found that impossible, and not only was he thus crippled, but his nervous system was affected so that at times he still suffered pain and could not rest, all of which facts were in a quiet way related by the plaintiff to the jury, the stump of his leg exposed to them that the unhealed wound might be observed by the jurymen.

The plaintiff was at the time of his injury thirty-two years old, was in the best of health, a man of unusual physique, who could stand the severest sort of labor and perform the arduous duties of a fireman on an engine as well, and above the average man of his age. He had been in the employ of the defendant as a fireman six and one-half years, both in freight and passen-

ger service, earning at the time of his injury about $100 per month, and after the injury and up to the trial of this case he had been unable to earn anything or do anything, as he had no other profession or trade than that he was pursuing when injured.

In view of those facts, this court does not consider that it would be justified in disturbing the verdict of the jury on the ground that the damages assessed to the plaintiff are excessive. See *Southern Ry. Co.* v. *Smith,* 107 Va. 553, 59 S. E. 372, and authorities cited; *Washington-Virginia Ry. Co.* v. *Bouknight,* 113 Va. 696, 75 S. E. 1032, Ann. Cas. 1913 E. 546, 647; *N. Ry. & L. Co.* v. *Spratley,* 103 Va. 379, 49 S. E. 502; *C. & O. Ry. Co.* v. *Swartz,* 115 Va. 723, 80 S. E. 568.

Upon the whole case, we are of opinion that there is no error in the judgment of the circuit court, and, therefore, it is affirmed.

*Affirmed.*